LITTLE v. CARTER COUNTY BOARD OF EDUCATION.—146 S. W. (2d) 144.

Eastern Section. August 10, 1940.

Petition for Certiorari denied by Supreme Court, December 21, 1940.

466

Vines, Hawkins & Bryant, of Johnson City, W. R. Allen, K. P. Banks, and W. R. Pearson, all of Elizabethton, and Charles B. Witt, of Benton, for plaintiff in error.

Raymond C. Campbell and Dayton E. Phillips, both of Elizabethton, for defendant in error.

PORTRUM, J.  The plaintiff, Mary Nan Little, was elected by the School Board of Carter County as a teacher in the primary department for the term of 1938-39; she entered upon her duties at the beginning of the term and taught for a period of five weeks, when she was summarily dismissed upon the assigned reason that the Board

had employed too many teachers and her services were not necessary, and that the salary carried under her contract when added to all other expenditures incurred as salary for primary teachers, exceeded the limit fixed by the budget for this purpose, which rendered her contract void. She surrendered her last class roll, school supplies, etc., and gracefully withdrew. It is admitted by counsel representing the Board that there was no objection to her other than that above assigned. From this record there could not be, except, perhaps, the superintendent and secretary of the Board admits telling her, when talking to her when requested the reason for her discharge, that he said, quoting her, "as far as he knew there wasn't a teacher in the Hampton school that voted for him, and for that matter he didn't know that I voted for him."

As a result of this dismissal, Miss Little instituted suit before a Justice of the Peace for a breach of contract, and the case was carried to the Circuit Court where it was tried anew by the Circuit Judge without the intervention of a jury.

The Board of Education submitted its annual budget to the quarterly County Court at its April term, as it is required to do by statute, which budget was approved and adopted by the court. This budget carried an estimated grand total of income in the sum of $169,000 and is composed of items 1 and 2, the first being total income from the State, $107,000, made up of per capita appropriation $58,000, equalization fund allotment $45,000, transportation grant $3,000, library and forest reserve income $1,000. And item 2 is a total of estimated county income of $62,000, made up of the anticipated tax levy for the school term of 1938-39.

The proposed expenditure of this fund is set out in numerous items of school expense, as estimated and determined upon by the Board. The items that we are concerned with comes under the head of "Instructions: Salaries of teachers, $109,000." The law requires that the teachers be elected before May 1 of each year. One hundred and seventy-seven teachers were elected on April 30, 1938, the minutes showing:

"Carter County, Tennessee. Harry B. Leonard, Chairman, Board of Education, teacher elected April 30, 1938.

"The salaries as set by the State scale at the time of the election and as written into the contract dated as July 1, 1938. . . . (Then follows a list of the teachers elected, with salaries opposite their names designated per salary state scale, and the salary carried by the contract designated salaries subsequently written into the contract.)"

The large number of these teachers were employed at a higher salary than that fixed by the state scale. This is permissible for the state scale is a minimum salary required before the county can participate in certain state funds. This list contains the name of the plaintiff,

Mary Nan Little, whose state scale salary was the sum of $520, as fixed therein, and her contract salary the sum of $600, as fixed therein, and her contract dated July 1, 1938, fixes her salary at $75 per month without any designation of the length of the term. These purported minutes appear as exhibit 2 to the testimony of Harry Leonard and the date of their adoption is not shown. The minutes of the meeting of April 30, without the state rate or the fixed salaries, appears in Exhibit 1 to the testimony of C. M. Morgan, the caption reading as follows: "The Carter County Board of Education met at 9 a. m. April 30, 1938, with all members present and teachers for the year 1938-39 were elected as follows: (Followed by the list of teachers elected, which list includes the name of the plaintiff.)" Then following the list is the following, "All teachers elected subject to proper certification," and the adjourning order of the Board, signed by the chairman and secretary.

The law requires that the list of teachers be submitted to the Commissioner of Education at Nashville prior to July 1, in order that he might determine their qualifications, and fix the state scale applicable to each of them, which is based upon their educational qualifications plus increment, which means that the rate increases with efficient service. Chapter 127, section 3, Public Acts of 1937. The Commissioner performed this duty on a form known as chapter D-881, which bears date of July 21, 1938, and is Exhibit No. 6 to the testimony of C. M. Morgan. The purpose of this is to acquaint the Board of Education with the minimum salary required for each teacher elected, in order that the Board can fix the salaries of the elected teachers. And upon this information the Board fixed the salaries as shown by the quotation from the first exhibit above referred to. The date does not appear from the minutes when this formal action was had. The total of the minimum salaries of these teachers as fixed by the state is the sum of $103,066, and the total of the salaries as contracted which is the maximum salaries here, is the sum of $117,000 as testified to by an auditor.

The auditor's conclusion is that since the salaries as contracted at $117,000 and that the item as fixed in the budget for salaries is $109,000, therefore the budget is overdrawn, for expenditures incurred in excess of the budget which, at the conclusion of the Board, rendered all of the contracts void. If the premise is correct, then the conclusion is perhaps correct, and this is a question for the court to determine. But we will deal with it after the conclusion of the statement of the case.

The Board again met in August and employed fourteen additional teachers, with a state rating of $6,420, and salaries fixed in the contract of $7,064. This was taken from a memorandum filed in evidence, and there is no showing that this list of teachers was in fact submitted to the State Commissioner of Education, or that the

whole list appears upon the minutes of the Board. It appears from the testimony that the Board executed contracts in August to teachers without the formality of the election of the teachers, or in a minute entry showing their election. By adding the $7,000 to the $117,000 the total sum of teachers' salaries is increased to the sum of $124,000.

After the August election of 1938, a new County Superintendent and members of the School Board were elected, displacing the old, and they qualified on the following September 5. The schools were opened in August and 177 teachers were assigned their schools and began teaching. There were more teachers than this number elected since the fourteen were given contracts in August, and about this number received no schools. It is not known from this record who they were that received no schools.

The new School Board, with the new Superintendent, met some time after his qualification and assumption of office, (Copies of the minutes of the meeting are filed in the record, but they have been mutilated after the copies were prepared, since it is apparent that the captions of the minutes have been torn away, and it is impossible to tell when these Board meetings were held.) The minutes show as follows: "15th. That the following teachers be elected for the school year for 1938-39 and their salaries set as follows: . . ." (Then follows an entirely new list of teachers with designated salaries, numbering 177, with an aggregate salary of $101,224. These figures were taken from the auditor's list, which in turn were taken from the minutes of the Board, and bears this further notation:) "The service from the temporary verbal contract naming six with an aggregate salary of $3,828. This makes a grand total of $105,552."

From this record it would seem that all of the teachers were discharged and their contracts abrogated, on the theory they were void as carrying an appropriation in excess of the budget, and new contracts were made, and as a result an unknown number selected on April 30 were dropped, including the plaintiff. It is insisted that this action of the new School Board is void and operates as a breach of the plaintiff's contract. It is made the duty of the School Board to elect and contract with teachers in the spring, and when they perform that duty the question of whether or not the contracts entered into are legal and valid is a judicial question, and it is not a part of the function of a School Board to assume unto itself this judicial power, and pass upon the validity of contracts outstanding, which were made by their predecessors in office and to arbitrarily and without a hearing repudiate them. If they entertain a doubt as to the validity of the contract or that the appropriation exceeds the budget in violation of law, the course of procedure and the remedy is provided in the Code, which remedy relieves the Board of the assumed judicial function. And while it is the duty of the County Superintendent to examine all accounts authorized by the Board to

see that the budget as approved is not exceeded, Code, section 2327a, subsection 4, and finding it so, or being of the opinion that it might be so, the procedure for him to follow is made plain by statute. It is made the duty of the Commissioner of Education, Code, section 2314, subsection 16, ''Whenever it shall appear to the commissioner of education from the report of any school official or from any other reliable source that any portion of the school fund has been lost, misappropriated, or in any way illegally disposed of, or not collected, or is in danger of loss, misappropriation, illegal disposition or failure of collection, it shall be the duty of the commissioner to call upon the district attorney or county judge or chairman of the county court, or the county attorney, to protect, recover, or force.collection of such funds, provided the governor shall first give his approval to such action.''

The law contemplates an orderly judicial procedure, and not summary judicial action by an administrative board acting both as litigant and judge.

And the law also defines how and for what causes a teacher or principal may be dismissed. Code, section 2325, subsection 10. But only after first having been given in writing due notice of the charges and an opportunity for defense. Under this section the Board cannot discharge a duly elected teacher holding a contract to teach for financial or economic reasons. One of the reasons for the discharge assigned is that there were more teachers elected and serving (177) than were necessary for an efficient administration of the school. And it is stated that the per capita attendance entitled the county to 170 teachers, based upon 25 students to the teacher, and the quota had been exceeded. The number of teachers allowed is fixed by the State Commissioner, involving intricate computation, and the list of teachers elected in April must be and was submitted to the State Commissioner, and he did not disapprove one of this number, and the number does not appear to be excessive, for the School Board was under the necessity of hiring six temporary teachers by verbal contracts at a salary of $3,800 to supplement teachers it had elected as representing the county's quota.

We hold that the Board was not justified in dismissing the plaintiff because her services were not needed.

She and the former Chairman of the Board state that she was elected in April and accepted her employment the 1st of July and that the salary was based upon the rate scale. The record shows that the salary was fixed and written into the contract on July 1, 1938, and that fourteen additional teachers elected in August had their salaries fixed then. There is no proof justifying the conclusion that all the salaries were fixed in August. The contracts of all the teachers elected April 30 are legal and binding, unless it is determined the aggregate sum appropriated exceeds the budget.

This presents a difficult question of fact. The truth is that no one but the State Commissioner of Education or some one connected with and familiar with the information in his office, and the rules and regulations, can determine accurately the amount of the budget. For the amount payable to each county is dependent upon the contingencies that are to be determined by the Commissioner, and without the ruling of the Commissioner no one else can determine the correct amount. In order that the Commissioner can make the apportionment, the law requires the County Board to submit to him the budget fixed by the County Court, the teachers elected, from which he determines their qualifications and rating from records in his office, and monthly reports made by the teachers and submitted to the Superintendent, made and reported monthly from which the daily attendance is compiled, together with the report of the scholastic population.

And as heretofore shown, it is his duty to see that no funds are misappropriated or illegally disposed of. When he examined this budget, together with the list of teachers elected, and the copies of their contracts which must be filed with him, showing any increase in salary above the State minimum, and being able to approximate the apportionment of the State funds, he can determine if the contracts exceed the budget. It is proven that he performed his legal duty and the presumption is the contracts do not exceed the budget. The plaintiff starts out with this prima facie presumption in her favor, and the burden rests upon the Board to establish by proof that the contracts in fact exceeded the budget. Morton v. Hancock County, 161 Tenn., 324, 30 S. W. (2d), 250.

The Board has attempted to carry this burden by showing that the item for elementary teachers as fixed in the budget was the sum of $109,000, and that the aggregate of the contracts was the sum of $117,000, making a discrepancy of $8,000 in excess of the amount allowed. We ask, How did such a large discrepancy as this escape the Commissioner of Education? The reason is that the amount fixed in the budget is only an estimate and was placed therein only as guide for the County Court in determining about what amount would be necessary for the County to raise under its tax levy to meet the requirements of the budget. It is designated "elementary school summary of estimated income." The first item is State income, $107,000. This is the amount received the previous year, and the sum might be larger or it might be smaller for the school year of 1938-39. This State fund is made up of numerous items, the first being per capita apportionment $58,000. This is determinable upon the school census fixed for the year after the adoption of the budget. It fluctuates with the increase or decrease of the school population. The next item is equalization fund allotment $45,000. This fund arose from the appropriation made in chapter 127, Public Acts of 1937, page 532, and is apportioned by the Commissioner of Education

among the different counties of the State upon certain contingencies to be ascertained by the Commissioner; one of which is the sum per capita for each child in average daily attendance. Another is, in certain counties an appropriation sufficient to extend the term the full period of eight months. And other provisions requiring an apportionment upon data received during the school year, and "when the revenues of the State will permit thereof, it is hereby expressly declared to be the legislative intent that the State shall assume additional portions of teachers' salaries until such time as the State shall pay the said counties a sum equal to the amount required to finance the minimum school program," etc., sec. 4. And there is a stabilization fund. "This appropriation shall be distributed by the Commissioner of Education, and any residue therefrom shall be distributed to the several counties, cities and independent school districts of the State on the basis of the average daily attendance maintained in the elementary schools during the preceding year." It is clear that the State contribution for one year does not accurately reflect what the State contribution will be for the next, and there is no attempt in this record to show what the exact contribution of the State was for the year or term 1938-39.

And the County revenue is estimated and reflected as follows:

"(1) The regular county tax levy at 50 cents per $100 (on a total assessed valuation of $10,000,000) less 20 per cent for delinquent taxes, $40,000. (2) Total tax-wide special tax levy, transportation $10,000, poll taxes including delinquent poll taxes," etc. The tax levy was made in July after the adoption of the budget. There is nothing in the record to show that the levy was in fact 50 cents upon $100 or that the valuation was $10,000,000. The State Commissioner of Education treated these figures with some latitude when he did not disapprove the budget upon the data furnished him.

And the item of $109,000 for elementary teachers' salaries is not conclusive, when taken in connection with the amount of the salaries in the contracts. In the first place, as shown by the minutes, the teachers were elected subject to their qualifications as determined by the State Commissioner. It is shown as a matter of common practice that many of the elected teachers failed to qualify. Several teachers in this list did not qualify. And under the provisions of the contract and the state law, the contract is indefinite in duration. It terminates if the daily attendance in the country schools is not maintained. As a matter of common practice numerous schools are discontinued in each county before the eight-month term has been completed. The Commissioner of Education from past experience and the records in his office estimates with a degree of accuracy the number of schools that could be expected to discontinue before the expiration of the term.

And the Federal Government contributes to the payment of teachers' salaries under certain Federal projects, which is authorized by State statute, through the Commissioner of Education. These contributions are not reflected in the budget, but the Board of Education contracts for the teachers, and this fund should be added to the items scheduled for elementary teachers' salaries.

And it is insisted that it is within the administrative power of the Board of Education to take from one item and add to another to meet the needs of the Board, and that the law only prohibits exceeding the total sum named in the budget. The purpose of the budget is not so much to direct the administration of the funds as to protect the County against an appropriation in excess of the total sum allowed by the budget. The grand total of the budget is $169,000. There is no attempt made to show that this sum was or would be exceeded in the administration of the schools for the year or term 1938-39. It is not established by this record that the budget was exceeded.

As heretofore stated, there is no person other than the State Commissioner of Education, or one familiar with the data in his office, his rules and regulations, who can establish by competent proof the amount of the budget for any scholastic year. His office was not called upon to furnish the data from which the budget might be established. It is regrettable that the County is subjected to loss by the unwarranted action of the Board of Education. The remedy is clear; that it seek advice and call upon the State Commissioner to protect it against illegal disposition of County funds. The Commissioner renders the protection by calling upon the judicial departments whose function it is to pass upon the legality of contracts. He would have first determined if the budget had been exceeded, and finding it so he would have called upon the County Attorney or District Attorney to protect the funds by judicial action. Administrative boards in this state are not clothed with judicial function, and they cannot review the acts of their predecessors, creating vested rights, and annul them at will.

It is not established in this case that the budget was exceeded and the plaintiff is entitled to a recovery for $75 per month for the term of eight months, less the five weeks she taught if she has been paid for the same, and provided the school term ran for the whole period of eight months at the school where she contracted to teach. She will also recover the cost of the cause.

Reversed.

Ailor and McAmis, JJ., concur.