CONRAD HARTWIG, APPELLANT, V. ROBERT E. BERGGREN ET AL., APPELLEES, A. C. WRENN ET AL., INTERVENERS-APPELLEES.

140 N. W. 2d 22

Filed February 11, 1966. No. 36085.

Van Steenberg, Winner & Wood, for appellant.

Atkins, Ferguson & Nichols, Lovell & Raymond, and Wright, Simmons & Hancock, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

CARTER, J.

This is an action by Conrad Hartwig against the defendants Robert E. Berggren and H. Jerry Berggren, and their respective spouses, and the Island Cattle Company, a copartnership, to enjoin the use of certain lands claimed by the plaintiff, and to quiet title to the lands in the plaintiff. Oden Wrenn, W. A. McCain and wife, and Equitable Life Assurance Society of the United States were impleaded as defendants, claiming or having some interest in the lands in question. James A. McCain and wife and A. C. Wrenn intervened, also claiming an interest in the ownership of some of the disputed lands. The trial court found against the plaintiff and for the defendants and interveners, and quieted title to the lands in the defendants and interveners. The plaintiff has appealed.

The plaintiff is the owner of riparian lands on the south side of the North Platte River in Sections 6 and 7, Township 22 North, Range 55 West of the 6th P. M. in Scotts Bluff County, Nebraska, which he acquired by warranty deed from M. B. Quivey in 1953. Patents to plaintiff's lands were issued to his predecessors in title before the islands in the river, the titles to which are the subject matter of this dispute, were in existence. The evidence shows that, before the construction of irrigation dams and reservoirs and modern bridges, the river was approximately one-half mile wide, carrying a full stream between its banks. Reservoir and bridge construction,

commenced in 1909, reduced the flow of the river and the islands appeared for the first time.

This litigation involves three of these islands, two of which lie in Section 7, and one of which extends from Sections 6 and 7 into Sections 5 and 8 downstream to the east. The plaintiff makes no claim to any land east of the east boundary of Sections 6 and 7. The three islands involved are referred to in the record as Goat Island, Beaver Island, and Island No. 6. The claimed lands of the parties are described in the judgment of the district court by metes and bounds, descriptions which we shall not repeat here. For convenience we shall refer to them as Goat Island, Beaver Island, and Island No. 6.

Defendant Oden Wrenn is the owner of Island No. 3, which lies mostly in Section 8 but extends over into Section 7. Plaintiff has produced no evidence of title in himself as against Wrenn. Intervener A. C. Wrenn owns lands on Island No. 3, subject to a life estate in his father, Oden Wrenn. The trial court correctly found that plaintiff had no interest in the Wrenn lands and quieted title in the Wrenns as against the plaintiff.

The defendants H. Jerry Berggren and Doris L. Berggren, husband and wife, both as individuals and as the sole partners in the Island Cattle Company, assert ownership in the Berggrens of Island No. 4, which lies mostly in Section 8, but extends into Section 7. Plaintiff produced no evidence of ownership in any part of Island No. 4 and the trial court correctly quieted the title in the Berggrens to their lands on Island No. 4 as against plaintiff.

The contentions of plaintiff as against the McCains are identical and will be treated as such. The original government survey of the area, made in 1877, shows the north meander line of the river to be a considerable distance north of the present bank of the river. The south meander line is some distance south of the south bank in the western half of Section 7 and is close to the

present bank in the eastern half, in fact a channel of the river is south of the original south meander line in the northeast quarter of Section 7. The mean line of the river as established in 1877 is north of the western end of Goat Island. This island and its accretions are claimed by the McCains. Plaintiff contends that he is the owner of lands south of the 1877 mean line of the river by virtue of his ownership of the south bank of the river. Goat Island was not patented until February 8, 1938, as a result of a government survey made in 1933. It is contended that plaintiff's rights as a riparian owner extended to the thread of the stream which he asserts is presumed to be the mean line fixed by the original government survey in 1877. But we do not think these contentions are valid in this case because of proof of adverse possession of the lands in question for more than 10 years.

Goat Island was not in existence when the government survey was made in 1877. In fact the river was nearly a half mile wide at that time and devoid of any islands in the area. Goat Island was surveyed in 1933, and in 1938 a patent was issued to Arthur Savard. In August 1939, M. B. Quivey, plaintiff's immediate predecessor in title, conveyed that part of Goat Island lying south of the thread of the stream to Blanche Scoggan, McCain's grantor. In March 1940, the district court for Scotts Bluff County in a case entitled Blanche Deutsch Scoggan v. Arthur Savard, quieted title to the lands here involved in Blanche Scoggan as against Savard. No appeal was taken from this judgment. Pursuant to the title thus acquired, McCains took possession of said lands. They fenced in their lands, including Goat Island and its accretions, and used said lands actually, openly, exclusively, and continuously under claim of ownership for more than 20 years. Walker v. Bell, 154 Neb. 221, 47 N. W. 2d 504; Worm v. Crowell, 165 Neb. 713, 87 N. W. 2d 384. The decision on this phase of the case is controlled by Burket v. Krimlofski, 167 Neb. 45, 91 N. W. 2d 57, wherein it is said: "The established rule is: Title

by prescription may be acquired to an island in a stream, which otherwise would belong to a riparian owner. Accretions to an island so held and occupied for more than the statutory period belong to the owner of the island, and not to the riparian owner to whom the island or a part of it would otherwise belong."

While there is some evidence that some of the lands were trapped for beaver and muskrat by lease or permission of M. B. Quivey, plaintiff's immediate predecessor in title to his riparian lands, it appears to have been done without the knowledge or consent of the McCains. Plaintiff never made a claim to the lands prior to 1960. The evidence preponderates in favor of the McCains on the issue of adverse possession, irrespective of all other considerations. The trial court properly quieted title in Goat Island and its accretions in the McCains.

Plaintiff also contends that he is the owner of Island No. 6. The island is also claimed by Robert E. Berggren and Sandra H. Berggren, husband and wife, H. Jerry Berggren and Doris L. Berggren, husband and wife, and the Island Cattle Company, or some of them, whom we shall refer to as the Berggrens. The Berggrens acquired title to Island No. 6 in September 1946 from M. B. Quivey, the deed reciting 16.47 acres, more or less, according to government survey. The island was surveyed in 1960 by the county surveyor of Scotts Bluff County, its acreage then was shown as 35.14 acres, indicating the extent of accretions to the island. The accretions belonged to the owner of Island No. 6 under the authority of Burket v. Krimlofski, heretofore cited. The evidence shows that Berggrens took possession of the island in 1946 under the deed of conveyance to them. The island was fenced at that time. In 1947 and 1948 the fence was removed and a new fence placed around the extremities of the island. Berggrens constructed a residence, barns, corrals, and a well-pressure system on the property. An electrical-power system was later installed. The island has been used since 1946 for pasturing cattle and horses.

Berggrens have paid taxes on the island since 1946. Some grading has been done by the Berggrens, principally for leveling for fences and the building of roads for access to the property. Since 1946 no one has questioned the ownership or possession of the Berggrens, including the plaintiffs, until 1960 when plaintiff claimed ownership. There is some evidence that hunters and trappers used parts of the island with the permission of the plaintiff. The evidence conclusively shows, however, that Berggrens have had actual, open, exclusive, and continuous possession of the island under claim of ownership for more than 10 years. The trial court so found and quieted title in Robert E. Berggren, the record title holder. The action of the trial court in this respect was correct.

The ownership of Beaver Island poses a more difficult problem. The Berggrens assert that they, or some of them, have claimed Beaver Island since they acquired the record title to Island No. 6 in 1946. Beaver Island lies to the southeast of Island No. 6 and north of plaintiff's land on the south bank of the river. Channels carrying the water of the North Platte River run on the north and south sides of the island. It is completely surrounded by water. The flowing channels are approximately the same width, although the north channel appears a little wider on the plats in evidence. The evidence of plaintiff's surveyor is to the contrary. The north channel flows between Island No. 6 and Beaver Island and the south channel flows between Beaver Island and the south bank of the river. The trial court found that Beaver Island accreted to Island No. 6 and that the Berggrens had established ownership by adverse possession as well. The plaintiff, the riparian bank owner to the south, alleges that this is error.

The record shows that Beaver Island, since 1946 to date of trial, was fit only for the grazing of livestock and hunting for wild game. The evidence of the Berggrens is that they have continuously used it for the grazing of cattle and horses, and for duck and pheasant

hunting by themselves and their friends. Their evidence is to the effect that they kept Beaver Island posted and kept hunters from using the island except by permission. They assert they knew nothing of hunters being on the island with plaintiff's permission except for one Krow whose duck blind was destroyed by them in 1960. This brought on a discussion between Robert E. Berggren and plaintiff in which each claimed title to the island. Berggren says this is the first notice he had that plaintiff claimed the island.

On the other hand, plaintiff produced three witnesses who testified that they had hunted on Beaver Island with plaintiff's permission in 1957. Two other witnesses testified that they hunted in the river with plaintiff's permission, but were uncertain as to whether or not they hunted on Beaver Island. It seems evident that friends or lessees of each hunted on Beaver Island at times without the knowledge of the other.

As to the contention of the Berggrens that they have obtained title by adverse possession, the evidence shows the following: H. Jerry Berggren testified that the Berggrens had driven cattle and horses across the north channel and grazed them on Beaver Island. He stated that the channel could be waded in hip boots. He testified further that they fenced Beaver Island in 1960. He says he never saw any livestock on the island other than that belonging to the Berggrens, or that anyone else ever made a claim to the island against them. Robert E. Berggren testified that Beaver Island was completely fenced in 1960. He said that from 1946 on the Berggrens grazed their cattle on Island No. 6 and Beaver Island during certain times in each year. He stated that he drove livestock across the north channel every year. He hunted on Beaver Island every year and directed poachers to leave if they had no permit from the Berggrens. He stated that he crossed the north channel with waders many times but that he was unable to cross the south channel in this manner because of its depth. In 1960 he

constructed a 50-foot bridge between Island No. 6 and Beaver Island. After completing the bridge and the fencing of the island, he proceeded no further in the development of the island because of notice of the present litigation. He has paid taxes on Beaver Island since the 1960 survey of the island by the county surveyor. He testified that the size of the island has remained constant since 1946.

The plaintiff, Conrad Hartwig, testified that he took possession of his lands on the south bank of the river in 1954. He made no objection to the use of the islands and accretions in the river until 1960 because he was not sure as to his land boundaries. He leased hunting rights on Beaver Island continuously since 1955 until the Krow incident in 1960 which brought the question of ownership and title to Beaver Island to a head. He says that he never saw the Berggrens making any use of Beaver Island, although he lived within two miles of it since 1927. He made some investigation in the area before taking possession to try to determine his boundary lines, with little success. There were no fences on Beaver Island at that time. Plaintiff's riparian lands were farmed by Henry Gorr before plaintiff bought them. Plaintiff saw cattle belonging to Gorr grazing on the east end of Beaver Island in 1952. He never saw cattle grazing on Beaver Island other than the one year. Plaintiff never used the island for grazing. He had no knowledge that any other person was claiming the island until 1959 and 1960. He said he leased Beaver Island for hunting from 1954 to 1960, which was verified by the testimony of the lessees.

Plaintiff contends that the mean line of the center of the river is a factor in determining ownership by a riparian owner of unplatted islands in a river. We think not. The meander lines of the river as fixed by the original government survey are not boundary lines unless designated as such in the instrument of conveyance. The mean center line of a river, determined by

dividing the distance between meander lines of the river, is an arbitrary location of the center of the stream and is not a determination of the thread of the stream in this jurisdiction. "The thread or center of a channel, as the term is employed, must be the line which would give the owners on either side access to the water, whatever its stage might be, and particularly at its lowest flow." State v. Ecklund, 147 Neb. 508, 23 N. W. 2d 782. We cannot, therefore, say that any rights of a riparian owner are established or supported by such a mean center line. The evidence of the plaintiff as to adverse possession by him is insufficient to show that he has had open, notorious, exclusive, continuous, and adverse possession under a claim of ownership for the statutory period of 10 years.

The evidence sustains the trial court's holding that Robert E. Berggren acquired ownership of Beaver Island by adverse possession. In addition to the evidence we have recited herein, we point out, first, that the trial court went upon and inspected the lands that were the subject of the action. While such an inspection of the premises in an adverse possession case may be limited in effect in some cases as stated in Independent Stock Farm v. Stevens, 128 Neb. 619, 259 N. W. 647, it has some value in arriving at a decision where the evidence is in irreconcilable conflict. Second, where there are irreconcilable conflicts in the evidence in a case tried de novo in this court, this court will consider the fact that the trial judge saw and heard the witnesses, and adopted one version of the facts rather than the other. In considering all of the evidence, the inspection by the trial court, and the findings of the trial court on facts in irreconcilable conflict, we can find no reason for interfering with the conclusion of the trial court that Robert E. Berggren had obtained title to Beaver Island as against the plaintiff by adverse possession. Since title by adverse possession to an island in a river is superior to the claims of a riparian owner, it is unnecessary to

decide assignments of error based on the claimed riparian rights of the river-bank owner.

For the reasons stated, we find no prejudicial error in the record, and the judgment of the district court is affirmed.

AFFIRMED.