HELEN I. SUMMERVILLE, APPELLANT, v. SCOTTS BLUFF COUNTY, NEBRASKA, APPELLEE.
154 N. W. 2d 517

Filed December 1, 1967. No. 36609.

Atkins, Ferguson & Nichols, for appellant.

James W. Ponder, Jr., and Van Steenberg, Winner & Wood, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

Plaintiff commenced an action against Scotts Bluff County and the United States of America to quiet title to an island in the North Platte River. Thereafter, a motion was filed to dismiss the United States from the action on the ground that the complaint alleged no basis for jurisdiction and that the court had no jurisdiction over the United States in any unconsented suit and that there was no statutory consent. The motion was granted and the United States was dismissed as a party.

By amendment, the action became one for an injunction against the defendant Scotts Bluff County to restrain the defendant from entering or trespassing upon the island or interfering with the plaintiff's use thereof and involves the right to possession as between plaintiff and defendant.

For purposes of clarity, the following sketch of the area involved is incorporated.

xxxx    Plaintiff's land..

///// The Island.

The second amended petition alleged plaintiff's ownership of the riparian land designated as Lot 7, Section 17; and Lots 2 and 3, Section 20; all in Township 22 North, Range 55 West of the 6th P.M., Scotts Bluff County, patented by the United States to plaintiff's predecessors in title; that the land formed a continuous part of the west bank of the North Platte River at the time of the original government survey in 1877; that Lots 10 and 11 of Section 17 and Lot 6 of Section 20 constitute an island which

was formed by process of accretion and reliction subsequent to the 1877 government survey; that the island did not exist at the time, of the original government survey in 1877; that plaintiff and her predecessors in title have been in possession of the island since its formation; that the defendant Scotts Bluff County claimed its interest in the island by virtue of a patent issued by the United States of America to the County of Scotts Bluff on April 6, 1966, and that such patent was void and was issued in derogation of patents issued by the United States to plaintiff's predecessors and other riparian owners; and that the defendant Scotts Bluff County had erected a fence around the island and had removed plaintiff's cattle and treated plaintiff and her husband as trespassers and indicated its intention to continue to do so.

The prayer of the plaintiff was for an injunction against defendant Scotts Bluff County restraining it from entering or trespassing upon the island or interfering with plaintiff's use of it. The demurrer of Scotts Bluff County was overruled and a temporary injunction was granted to the plaintiff.

The defendant's answer alleged that the island was omitted from the field notes and plats of the survey of the United States in 1877 and that it was at that time a well-defined body of public land bounded by well-defined channels in the river; that the island was not formed by a process of accretion and reliction; that a supplemental survey and plat was made by the United States and approved by it September 1, 1937; that the island remained public land of the United States until April 6, 1966, when patent was issued to the defendant county; and that plaintiff and her predecessors have not been in exclusive possession since formation.

It is undisputed that the North Platte River is a nonnavigable stream; and that the original government survey made in 1877 established meander lines of the river and disclosed no islands in the area in question.

Patents from the United States government based on that survey were issued to all riparian owners at all points on both sides of the river in the area involved between 1890 and 1897 except for Lot 7, Section 17, which was patented to plaintiff's predecessors in title in the year 1918.

In 1935, the United States government conducted a resurvey of this area and surveyed and platted the island into the lots indicated. Various other supplemental surveys had been made and plats of survey delineating islands in the North Platte River were approved by the government in 1922, 1927, 1934, and 1937. The survey made in 1935 was approved in 1937 and is the one involved here. Sometime after 1937, a Joseph Carmichael filed a homestead application for the island which was rejected by the land department. The plaintiff's husband directed at least two letters of protest to the land department in 1942 directed at the Carmichael application. He advised the land department not only that he was the owner of the riparian land on the west bank and entitled to the accretion land, but that the island itself was pasture which plaintiff and her husband had fenced, had paid state and county taxes on and had improvements on, and that there was a mortgage on one of the lots of the island. The land department denied the Carmichael homestead application, apparently on the ground that the land was not suitable for agriculture, but advised the plaintiff's husband that the records of their office showed Lot 6, Section 20 to be vacant land of the United States and that any use or occupation would be considered a trespass against the United States.

Thereafter, apparently sometime prior to 1965, the defendant Scotts Bluff County applied for a patent to the island and on March 22, 1965, a proposed classification issued from the Bureau of Land Management classifying the land as recreational land. A protest was filed by the plaintiff but denied by the Bureau of Land Man-

agement. Patent to the island issued to defendant Scotts Bluff County on April 6, 1966.

After trial, the court found that it did not have jurisdiction to determine title to the island for the reason that the United States was not a party to the action, but that it did have jurisdiction to determine rights of possession as between the parties; and that for the purpose of determining the right to possession only, and for no other purpose, the court assumed that the 1966 patent granted to the defendant was valid and by reason thereof, the defendant was entitled to possession of the island. The temporary injunction was therefore dissolved, permanent injunction was denied, and costs were taxed to the plaintiff. We reverse the judgment.

The crux of the issue here is whether the island was in existence as a permanent body of land, separate and distinct from the mainland and above mean high water, at the time of the original survey of 1877, or whether, if there were then any such island or islands, their omission constituted constructive fraud on the United States.

Subject to the easement of navigation, riparian owners are entitled to the possession and ownership of the soil formerly under the waters of the stream as far as the thread of the stream. Kinkead v. Turgeon, on rehearing, 74 Neb. 580, 109 N. W. 744, 121 Am. S. R. 740, 7 L.R.A.N.S. 316; Krumwiede v. Rose, 177 Neb. 570, 129 N. W. 2d 491. As recently as Hartwig v. Berggren, 179 Neb. 718, 140 N. W. 2d 22, this court reaffirmed the rule that the meander lines of a river as established by the original government survey are not boundary lines unless made so by the instrument of conveyance. This rule was established by the Supreme Court of the United States as early as Hardin v. Jordan, 140 U. S. 371, 11 S. Ct. 808, 35 L. Ed. 428. That case held that the meander lines running along or near the margin of such waters are run for the purpose of ascertaining the exact quantity of the upland to be charged for and not for the purpose of limiting the title of the grantee to such mean-

der lines, and that the waters themselves constitute the real boundary. In that case, it was stated: "It has never been held that the lands under water, in front of such grants, are reserved to the United States, or that they can be afterwards granted out to other persons, to the injury of the original grantees. The attempt to make such grants is calculated to render titles uncertain, and to derogate from the value of natural boundaries, like streams and bodies of waters."

In Whitaker v. McBride, 197 U. S. 510, 25 S. Ct. 530, 49 L. Ed. 857, the Supreme Court of the United States, in affirming a determination of this court, McBride v. Whitaker, 65 Neb. 137, 90 N. W. 966, specifically held that the question of the title of the riparian owners is one of local law and unrestricted grants of the government, bounded on streams and other waters, are to be construed according to the law of the state in which the lands lie, citing Hardin v. Jordan, *supra.*

The defendant Scotts Bluff County relies upon cases which either relate to situations in which existing land was erroneously described as being water or covered by water, or situations where an island in a navigable river was actually in existence at the time of the survey, or where the amount of land omitted from the survey was such as to indicate mistake amounting to fraud or constructive fraud upon the United States. Typical of cases cited by defendant in this connection is Scott v. Lattig, 227 U. S. 229, 33 S. Ct. 242, 57 L. Ed. 490, 44 L.R.A.N.S. 107. There was no dispute there that the particular island involved was not only in existence at the time of the survey, but was widely separated from the shore, and was fast dry land in a navigable river.

It seems clear that the broad implications of Hardin v. Jordan, *supra,* have been modified where there was a showing that an island was left unsurveyed by fraud or mistake or circumstances amounting to constructive fraud on the United States. We have been cited to no case which has yet held that land actually under water

in the bed of a nonnavigable, stream, meandered by the original government survey, becomes land reserved to the United States simply because a sizeable but still unstable island developed within 58 years after the survey. See, also, Clark on Surveying and Boundaries (2d Ed.), § 172, p. 168, § 267, p. 304, and cases there cited.

It therefore becomes material and necessary to consider the, issues raised by plaintiff's petition and defendant's answer with regard to whether or not the island was in existence as a permanent body of land, separate and distinct from the mainland and above mean high water, at the time of the government survey in 1877.

The defendant county's evidence rests almost entirely upon the field notes of the 1935 survey which indicated that the, island was, at that time, of approximately equal elevation with the average mainland banks, although it had channels and low places. The field notes also show that the surveyor relied heavily on the fact that timber had been cut and removed from the island for some years and that several cottonwood stumps indicated an age of 53 years as of 1935. There was no note made as to where these stumps were located on the island. The surveyor concluded that the island was in existence "prior to the disposal of the shore lands and is public land erroneously omitted from the, original survey." The only other evidence of the defendant on this issue was that of a forrester who had taken a core from one cottonwood tree in the, east central part of the island in November 1966, which he found to be then 77 years old. The forrester conceded that it was possible that even the one tree, might not necessarily have been above the surface of the water throughout the years and that it is possible that it started on a sandbar. In either event, taking the defendant's evidence at its best, it established only that one or possibly a few cottonwoods began to grow at some point between the meander lines of the river sometime between 1882 and 1889, either 5 years or 12 years after the original government survey.

The actual testimony of the plaintiff's witnesses demolished the conclusion expressed in the surveyor's opinion in the field notes of the 1935 survey. The eyewitness testimony introduced by plaintiff shows without question that before the construction of irrigation dams and reservoirs and modern bridges, the river was approximately ½ mile wide, carrying a full stream between its banks. Some temporary structures to dam and divert the stream at a point almost immediately above the property involved here were commenced as early as 1895. The evidence is undisputed that as late as 1915, in the spring freshet season, the river was full bank to bank, and in the summertime when it was low, there were only toeheads and sandbars and small channels. These toeheads were described as islands of less than 1 acre. Up to 1915, there were no obstructions in the river at this general location except toeheads and sandbars.

A reference of the Supreme Court of the United States in the case of Whitaker v. McBride, *supra,* as to small islands in the main Platte River at the time of an earlier survey is appropriate. "Possibly they may have been regarded as having no stability as tracts of land but as mere sandbars, which are frequently found in Western waters, and are of temporary duration, existing to-day and gone to-morrow. Be that as it may, there is nothing to indicate any fraud or mistake on the part of the surveyors."

It must be concluded on the basis of the evidence in this case that not only was there no permanent body of land, separate and distinct from the mainland and above mean high water in 1877, but there was not even persuasive evidence that there was a shifting sandbar in the location at that time.

The defendant contends that the plaintiff has not exhausted her administrative remedies and that the actions of the Land Department or Bureau of Land Management established good and paramount title and right of pos-

session in the defendant. We think that the case of Lakelands, Inc. v. Chippewa & Flambeau Improvement Co., 237 Wis. 326, 295 N. W. 919, best answers defendant's argument: "The plaintiff bases its right to recover on the proposition that the allotment of the United States government pursuant to the proceedings instituted by Ilg for resurvey and replatting of the land bordering on the lake gave good and paramount title to the allottees. This would doubtless be correct if the title so passed were established by the judgment of a court of competent jurisdiction. But no such result follows from a determination of the land department of the United States government, or from a resurvey by such department, or from patents issued pursuant to such a resurvey. When a second patent is issued pursuant to a resurvey covering land covered by a prior patent based on the original government survey, the question which patent conveyed the title to the land covered by the later patent must be determined by the judgment of a court of competent jurisdiction." It was pointed out that the trial court in that case assumed that the patents issued pursuant to the resurvey proceedings were primary.

In discussing the question of how large a tract of land left unsurveyed within or beyond a meander line will be held invalid as constructive fraud upon the government, that court stated: "But the question whether the acreage is so great as to constitute a constructive fraud is a judicial question not determinable by the United States Government Land Department."

The defendant contends also that the United States is a necessary and indispensable party. The United States has retained mineral rights and a right of reverter in defendant's patent, and has also reserved as to one of plaintiff's patents, a right-of-way for ditches and canals constructed by the United States. As the lower court found, it had no jurisdiction to determine the title of the United States government to public land since the United States is not a party to the action, but it did

have authority to determine the right of possession as between plaintiff and defendant. Section 25-323, R. R. S. 1943, provides in part: "The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others or by saving their rights; * * *."

This case involves only the right of possession between two claimants of surface rights to the same land whose claims arise under different patents from the United States, where the United States is not a party, and has no present right of possession. No judgment or decree which this court can enter in this case could in any manner be binding upon the United States or affect its title or rights where it is not a party. See McBride v. Whitaker, *supra*.

Title to the riparian lots originally patented to plaintiff's predecessors was acquired by warranty deed to plaintiff and her husband dated February 16, 1942. That deed specificaly stated: "* * * the intention also being to convey any accruning (sic) lands thereto described as lots 10, Eleven and Six (10-11-6) or any other island or islands that first parties may be lawfully entitled to by virtue of the law of the United States of (sic) the State of Nebraska, or by common usage in connection with or by virtue of ownership of the above described lands, said accruning (sic) lands or islands being located in the river bed of the North Platte River." It is virtually undisputed that the plaintiff has had continuous adverse possession of the island as against all persons except the United States during the period since 1942 and until the defendant's attempts to dispossess her. Title by prescription may be acquired to an island in a river or stream which otherwise would belong to a riparian owner. Hartwig v. Berggren, *supra*.

The trial court correctly found that it had jurisdiction to determine as between plaintiff and defendant which was entitled to possession of the island, but erroneously determined the right of possession.

The judgment of the district court is therefore reversed and the cause remanded with instructions to enter an injunction against the defendant Scotts Bluff County restraining it from interfering with the plaintiff's possession and use of the real estate involved. The judgment should specifically provide that it shall not affect any rights of the United States of America, and that all its rights are specifically excepted and reserved to the United States.

REVERSED AND REMANDED WITH DIRECTIONS.

CARTER, J., participating on briefs.