REQUESTED BY: Senator Mark Quandahl, Nebraska State Legislature
Art. III, §§ 2, 3 and 4 of the Nebraska Constitution establish the Initiative and Referendum in Nebraska, whereby the people can circulate petitions to initiate statutes or constitutional amendments and to refer certain acts of the Legislature to the voters. The Legislature has enacted a body of statutes, found at Neb. Rev. Stat. §§ 32-1401 through 32-1417
(1998), which deal generally with the form of initiative and referendum petitions and the procedures by which those matters are submitted to the people. LB 729 would amend §§ 32-1405,32-1408 and 32-1412 in several respects to give additional duties and responsibilities to the Nebraska Secretary of State (the "Secretary") relative to the initiative and referendum process, and to allow earlier litigation of matters related to that process. You have articulated several "concerns" regarding the constitutionality of LB 729, and you have requested our opinion on the constitutionality of the bill. As discussed below, we share your concerns in several respects.
 PROVISIONS OF LB 729
Section 32-1405 currently provides that, prior to obtaining any signatures on an initiative or referendum petition, a statement of the object of that petition and the text of the measure shall be filed with the Secretary together with a sworn statement containing the names and street addresses of every person, corporation or association sponsoring the petition. The Secretary then submits the initiative and referendum petition to the Revisor of Statutes who reviews the measure and suggests changes as to form and draftsmanship. Those changes are maintained as public information by the Secretary, and may be accepted or rejected by the measure's sponsor. The Secretary then prepares five camera-ready copies of the initiative or referendum petition as finalized by its sponsor, and those copies are used to print petitions for circulation among the voters of the state.
LB 729[1] would add the following language to § 32-1405:
 The Secretary of State shall not accept for filing any initiative or referendum petition which (a) interferes with the legislative prerogative contained in the Constitution of Nebraska that the necessary revenue of the state and its governmental subdivisions shall be raised by taxation in the manner as the Legislature may direct, (b) does not comply with sections 32-1401 to 32-1416, (c) would violate the Constitution of the United States, (d) would violate the laws of the United States, or (e) fails to substantially comply with the procedural limitations imposed by the Constitution of Nebraska.
LB 729 would also amend § 32-1405 to add language which would allow residents of Nebraska to sue the Secretary to either require acceptance of an initiative or referendum for filing if such a measure was refused for filing under the preceding language, or to keep the Secretary from continuing the initiative or referendum process in the event that an initiative or referendum was accepted in light of the preceding language.
Section 32-1408 currently provides that the Secretary shall not accept any initiative or referendum petition for filing after it has been circulated for signatures if it "interferes with the legislative prerogative contained in the Constitution of Nebraska that the necessary revenue of the state and its governmental subdivisions shall be raised by taxation in the manner as the Legislature may direct." LB 729 would supply the following additional reasons for the Secretary to refuse to file such a circulated initiative or referendum petition for filing:
 [the petition] (2) does not comply with sections 32-1401 to 32-1406, (3) would violate the Constitution of the United States, (4) would violate the laws of the United States, or (5) fails to substantially comply with the procedural limitations imposed by the Constitution of Nebraska.
Finally, after the Secretary has verified petition signatures and made a decision to either place an initiative or referendum on the ballot or to refuse to do so, the current version of § 32-1412 allows residents to sue the Secretary to reverse that decision. LB 729 would amend § 32-1412 to allow a suit seeking to enjoin the Secretary from placing an initiative or referendum petition on the ballot based upon the legal sufficiency of the petition to be brought after circulated initiative and referendum petitions were filed with the Secretary but before a final decision by the Secretary with respect to placing the measure on the ballot. In such a lawsuit, LB 729 would broaden the definition of "legal sufficiency" to include a consideration by the court as to whether the petition (a) interferes with the legislative prerogative contained in the Constitution of Nebraska that the necessary revenue of the state and its governmental subdivisions shall be raised by taxation in the manner as the Legislature may direct, (b) does not comply with sections 32-1401 to 32-1416, (c) would violate the Constitution of the United States, (d) would violate the laws of the United States, or (e) fails to substantially comply with the procedural limitations imposed by the Constitution of Nebraska. In instances where a resident sues to require the Secretary to place an initiative or referendum measure on the ballot, LB 729 would amend § 32-1412 to require the petition signature verification process to continue if all petition signatures had not been verified.
 SEPARATION OF POWERS
As noted above, your opinion request lists several "concerns" with the constitutionality of LB 729. The first of those concerns involves art. II, § 1 of the Nebraska Constitution dealing with the distribution or separation of governmental powers. You describe this concern as follows: "[t]he bill violates the separation of powers set forth in Article II of the constitution, (by granting discretionary powers to the Secretary of State that should be reserved to the Judiciary)."
Art. II, § 1 of the Nebraska Constitution provides:
 The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted.
The language of this section prohibits one branch of government from encroaching on the duties and prerogatives of the others, or from improperly delegating its own duties and prerogatives.State of Nebraska ex rel. Stenberg v. Murphy, 247 Neb. 358,527 N.W.2d 185 (1995); State of Nebraska ex rel. Spire v. Conway,238 Neb. 766, 472 N.W.2d 403 (1991).
If passed, LB 729 would require the Secretary of State to make a determination in several instances as to whether a particular initiative or referendum is in violation of the Constitution of the United States or the laws of the United States in deciding whether or not to accept that initiative or referendum for filing. We assume that your concern with such a procedure under art. II, § 1 is that it appears to allow the Secretary, who is clearly an officer of the Executive Branch of government, to determine the constitutionality and legality of a particular initiative or referendum. That type of determination is normally performed by the Judicial Branch of government.[2]
An administrative agency can have duties of a quasi-judicial nature in addition to its rule-making duties. Slack NursingHome, Inc. v. Department of Social Services, 247 Neb. 452,528 N.W.2d 285 (1995). The conferring of executive or administrative functions requiring the exercise of quasi-judicial powers upon state agencies or officers does not conflict with the constitutional provisions regarding officers and bodies upon whom judicial power may be conferred. Slack Nursing Home, Inc. v.Department of Social Services, 247 Neb. 452, 528 N.W.2d 285
(1995); Anderson v. Tiemann, 182 Neb. 393, 155 N.W.2d 322
(1967). This is particularly true where such powers and duties relate to matters which are affected with a public interest and where, as in the present case, provision is made for appeal from decisions of such officers or agencies to the courts. Id.
On the other hand, administrative agencies, as a general rule, have no general judicial powers, notwithstanding the fact that they may perform some quasi-judicial duties. State ex rel.Stenberg v. Murphy, 247 Neb. 358, 527 N.W.2d 185 (1995);Transport Workers of America, Local 223, AFL-CIO v. TransitAuthority of the City of Omaha, 205 Neb. 26, 286 N.W.2d 102
(1979). And, unless permitted by the Constitution, the Legislature may not authorize administrative officers or bodies to exercise powers which are essentially judicial in their nature, or to interfere with the exercise of such powers by the courts. Id. An example of the latter rule occurred in theTransport Workers case where the Nebraska Supreme Court held that entering a declaratory judgment and ordering an accounting were judicial functions which were not within the powers of the Commission of Industrial Relations. Therefore, it appears to us that the constitutionality of LB 729 under art. II, § 1 turns, at least to some extent, upon whether a determination of constitutionality by the Secretary of State in the context of accepting an initiative or referendum petition for filing is a quasi-judicial or a judicial function. After reviewing relevant authorities, we believe that a significant argument may be made in this case that a determination by the Secretary of State regarding the constitutionality and legality of a particular initiative or referendum prior to filing it involves a judicial rather than quasi-judicial decision.
In State ex rel. Labedz v. Beermann, 229 Neb. 657,428 N.W.2d 608 (1988), the Supreme Court discussed the nature of the Secretary's duties involving a determination of the sufficiency of initiative petition signatures:
. . . It is clear that the secretary's determination of the sufficiency of the number of signatures collected on an initiative petition is administrative in nature, a ministerial act, and not judicial . . .
 An adjudicative proceeding is one in the course of which a deliberative entity hears evidence based upon which it will determine the rights of the individuals before it. By contrast, the secretary's duties and responsibilities, and those of the county election officials, are ministerial in nature, insofar as these persons do not hear evidence in the course of validating petition signatures but, rather, rely upon their own records in reaching their determination of the sufficiency of the number of signatures collected on an initiative petition.
229 Neb. 664, 665, 428 N.W.2d at 614. In addition, the Supreme Court also described a quasi-judicial proceeding as follows:
 When the law commits to an officer the duty of looking into facts and action upon them, not in a way which it specifically directs, but after a discretion in its nature judicial, the function is quasi judicial.
Nebraska Mid-State Reclamation District v. Hall County,152 Neb. 410, 429, 430, 41 N.W.2d 397, 410 (1950). Those two cases, read together, seem to indicate that a quasi-judicial proceeding occurs when an administrative agency hears evidence from or looks into facts involving parties before it, and then makes a discretionary decision based upon those facts. Such a definition would comport with the general notion of a quasi-judicial proceeding before an administrative agency such as a license revocation hearing, where the licensing agency would hear evidence regarding the activities of the license holder, and then decide whether or not to revoke the license.
Under LB 729, the Secretary would not conduct a hearing, consider his own records or other factual evidence, or make a factual determination in deciding whether or not a particular initiative or referendum should be accepted for filing prior to circulation of petitions for signature. Instead, the Secretary would simply decide whether the initiative or referendum violated the Constitution of the United States or the laws of the United States. It appears to us that such a decision would involve the Secretary in the determination of a question of law. In general, the determination of questions of law is a judicial function which cannot be exercised by executive officers. Summerville v.Scotts Bluff County, 182 Neb. 311, 154 N.W.2d 517 (1967); Stateex rel. Public Utility Dist. No. 1 of Okanogan County v. Dept. ofPublic Service, 21 Wn.2d 201, 150 P.2d 709 (1944); Little v.Carter County Bd. Of Education, 24 Tenn. App. 465,146 S.W.2d 144 (1940); Chester C. Fosgate Co. v. Kirkland, 19 F. Supp. 152
(S. D. Florida 1937); 16 C.J.S. Constitutional Law § 219. For that reason, we believe that there is a potential problem with LB 729 under the Separation of Powers provision of the Nebraska Constitution to the extent that it authorizes the Secretary to determine questions of law in the context of deciding whether or not to accept a particular initiative or referendum for filing. That task is a judicial function which cannot be delegated to the Secretary of State.
 JUSTICIABLE ISSUE/CASE OR CONTROVERSY
Your next concern with LB 729 involves the need for a justiciable issue and case or controversy in an adjudicative proceeding. You are concerned that ". . . the bill would require the Secretary of State to render an advisory opinion on non-justiciable issues." We presume this concern arises because LB 729 would require the Secretary to determine the constitutionality and legality of a particular initiative or referendum measure far in advance of the time that a decision was made as to whether or not the measure's supporters had gathered enough signatures to place the measure on the ballot, and far in advance of a decision by the voters to adopt the measure. As a result, the Secretary's decision could be for naught and advisory only, should sufficient petition signatures not be gathered or the measure be rejected by the voters. You are also concerned that "[t]he practical effect of the bill would be for the Secretary of State to reject all petitions in an attempt to force the court to give an advisory opinion."
While not a constitutional prerequisite for the jurisdiction of the courts, existence of an actual case or controversy is necessary for the exercise of judicial power in Nebraska. Statev. Nissen, 252 Neb. 51, 560 N.W.2d 157 (1997). A court decides real controversies and determines rights actually controverted, and does not address or dispose of abstract questions or issues that might arise in a hypothetical setting. Welch v. Welch,246 Neb. 435, 519 N.W.2d 262 (1994). Without an actual case or controversy, a court has no opportunity to exercise judicial power and in the absence of an actual dispute, a court has nothing over which to take jurisdiction. Id. In the context of the case or controversy doctrine, a justiciable issue requires a present, substantial controversy between the parties having adverse legal interests susceptible to immediate resolution and capable of present judicial enforcement. Koenig v. SoutheastCommunity College, 231 Neb. 923, 438 N.W.2d 791 (1989).
The case or controversy doctrine is a judicial doctrine which is applicable to the exercise of judicial power. As a result, we do not believe that it applies generally to decisions which the Secretary makes as an Executive officer, and for that reason, the Legislature could impose executive duties upon the Secretary which do not require the presence of a case or controversy. On the other hand, to the extent that LB 729 requires the Secretary to engage in judicial functions by deciding questions of law as discussed above, we believe that there would have to be an actual case or controversy before the Secretary to give him jurisdiction to make that determination. Otherwise, he could not engage in the exercise of judicial power (assuming, for a moment, that he could even constitutionally exercise that power in the first place). The Nebraska Supreme Court has indicated that a justiciable issue and an actual case or controversy cannot arise with respect to the constitutionality of an initiative or referendum measure unless and until the measure is adopted by the voters. Duggan v. Beermann,249 Neb. 411, 544 N.W.2d 68 (1996). For that reason, we do not believe that the Secretary may make a decision on the constitutionality and legality of initiative and referendum measures in the manner contemplated by LB 729 prior to the time that those measures are adopted by the people.
You are also concerned that the practical effect of the bill would be for the Secretary to reject all initiative or referendum measures in an attempt to require the courts to render an advisory opinion. In that regard, we cannot say whether the Secretary would or would not engage in such a practice. However, we do believe that it would be possible to argue that courts should not hear a case involving the constitutionality of an initiative or referendum prior to its adoption by the people, notwithstanding the procedures created by LB 729, based upon the notion that a judicial determination as to the constitutionality of the initiative or referendum under those circumstances would still involve the courts in offering an advisory opinion.
Finally, we would also note that the concluding portion of LB 729 purports to require courts to consider the constitutionality of initiative and referendum measures in certain circumstances after those measures have been filed with the Secretary for signature verification but before they have been adopted by the voters. The bill would accomplish this by broadening the definition of the court's determination of the "legal sufficiency" of an initiative or referendum measure to include a determination regarding the constitutionality of the measure along with a determination regarding the validity of petition signatures and so forth. In light of the holding in theDuggan case cited above, we find it likely that courts would reject this attempt to have them decide issues involving the constitutionality of initiative or referendum measures prior to adoption of those measures by the voters in the context of a challenge to the "legal sufficiency" of the petitions themselves.
 FACILITATING THE OPERATION OF THE INITIATIVE AND REFERENDUM
Your final concern goes to the duty of the Legislature to facilitate the operation of the Initiative and Referendum in Nebraska in the context of legislation enacted to regulate the process. You are concerned that: "LB 729 interferes with the peoples (sic) right to petition guaranteed by Article III of the Constitution." We believe that this concern presents the most significant objection to the constitutionality of LB 729.
In Nebraska, the right of initiative is precious to the people, and a right which the courts are zealous to preserve to the fullest spirit as well as letter. State ex rel. Brant v.Beermann, 217 Neb. 632, 350 N.W.2d 18 (1984). As a result, provisions concerning the initiative should receive a liberal construction to effectuate the policy proposed and adopted by the initiative as a part of the democratic process. Id. The right of initiative should not be circumscribed by restrictive legislation or narrow and strict interpretation of the statutes pertaining to its exercise. State ex rel. Morris v. Marsh,183 Neb. 502, 162 N.W.2d 262 (1968). Constitutional provisions with respect to the right of initiative and referendum reserved by the people should be construed to make effective the powers reserved.Klosterman v. Marsh, 180 Neb. 506, 143 N.W.2d 744 (1966).
Art. III, § 4 of the Nebraska Constitution provides, in pertinent part :
 The provisions with respect to the initiative and referendum shall be self-executing, but legislation may be enacted to facilitate their operation.
A number of Nebraska cases have dealt with statutes intended to "facilitate" the initiative and referendum process in the context of liberal construction intended to protect and preserve those rights.
First of all, laws to facilitate the operation of the initiative and referendum provisions must be reasonable, so as not to unnecessarily obstruct or impede the operation of the law.State ex rel. Stenberg v. Beermann, 240 Neb. 754,485 N.W.2d 151 (1992); State ex rel. Ayres v. Amsberry, 104 Neb. 273,177 N.W.2d 179 (1920). In that regard, legislation to facilitate the initiative and referendum must be such as frees the operation of the constitutional provisions from obstruction or hindrance.State ex rel. Ayres v. Amsberry, 104 Neb. 273, 177 N.W.2d 179
(1920). As a result, any legislation which would hamper or render ineffective the initiative or referendum power reserved to the people would be unconstitutional. Id. With those rules in mind, the Nebraska Supreme Court has adopted a definition and context for legislative "facilitation" of the initiative and referendum process:
 We think the constitutional provision authorizing the legislature to enact laws to facilitate the operation of the initiative power means that it may enact reasonable legislation to prevent fraud or to render intelligible the purpose of the proposed law or constitutional amendment. Any legislative act which tends to insure a fair, intelligent, and impartial result on the part of the electorate may be said to facilitate the exercise of the initiative power.
State ex rel. Stenberg v. Beermann, 240 Neb. 754, 756, 756,485 N.W.2d 151, 152 (1992) quoting State ex rel. Winter v. Swanson,138 Neb. 597, 294 N.W. 200 (1940) (citations omitted). Under that definition, we do not believe that the provisions of LB 729 would "facilitate" the initiative and referendum process in at least two respects, and for that reason, the bill is of suspect constitutionality under art. III, § 4.
First of all, we do not see how having the Secretary of State determine the constitutionality or legality of a particular initiative or referendum under the Constitution and laws of the United States prior to its circulation among the people would prevent fraud or render the initiative or referendum more intelligible. Such a determination of constitutionality would in no way go to the mechanics of the initiative or referendum process. Nor would it serve to make the initiative or referendum more understandable to Nebraska citizens.
Second, and perhaps most important, LB 729 would allow the initiative and referendum process in Nebraska to be bound up in litigation for years before the supporters of a particular initiative or referendum even had an opportunity to begin circulation of their petitions to place their measure on the ballot. Under the terms of the bill, the Secretary must make a determination regarding the constitutionality and legality of a particular initiative or referendum measure at the beginning of the initiative or referendum process, before petitions are even circulated. If he determines that a particular measure is constitutional, then opponents of that measure may sue to test his conclusion and to enjoin him from allowing the process to go forward. Conversely, if he determines that a particular measure is not constitutional, then supporters of that measure may sue to require him to accept the measure for filing. In both cases, decisions by the district court are appealable. Therefore, litigation of the questions in either case could take at least a year, and probably longer.
The Nebraska Supreme Court has noted, "[t]o preserve the full spirit of the initiative the submission of issues to the voters should not become bogged down by lengthy litigation in the courts." State ex rel. Brant v. Beermann, 217 Neb. 632, 636,350 N.W.2d 18, 21 (1984). Based upon our experience over the years where we have found that placing initiative and referendum measures on the ballot frequently leads to litigation under the present system, we believe that LB 729 will in all likelihood result in litigation involving most initiative and referendum measures before proponents of the measures are even able to collect a single signature. As a result, LB 729 will cause initiative and referendum measures to become bogged down at the outset by lawsuits involving constitutional issues in the courts. For that reason, we do not believe that the bill will "facilitate" the initiative and referendum process. Under the authorities cited above, it is, therefore, probable that our courts would hold the bill to be unconstitutional.
Sincerely yours,
 DON STENBERG Attorney General
 Dale A. Comer Assistant Attorney General
cc. Patrick O'Donnell Clerk of the Legislature
Approved by:
Don Stenberg 
Attorney General
[1] After discussing this matter with members of your staff, our opinion is directed to LB 729 as amended by the committee amendments which were adopted on General File. That form of the bill is reflected in AM 7124 which is on Select File, and which also incorporates the ER Amendments.
[2] We understand that you have proposed an amendment to LB 729 which would require the Secretary to transmit an initiative or referendum to this office for a determination as to whether it should be accepted for filing under the standards set out in the bill. Obviously, this would not cure a potential separation of powers problem since this office is also an Executive agency.