LINCOLN DAIRY COMPANY, A CORPORATION, ET AL., APPELLANTS, V. PEARLE F. FINIGAN, DIRECTOR OF THE DEPARTMENT OF AGRICULTURE AND INSPECTION OF THE STATE OF NEBRASKA, ET AL., APPELLEES.

104 N. W. 2d 227

Filed July 15, 1960. No. 34794.

*Ginsburg, Rosenberg & Ginsburg, Norman Krivosha,* and *W. O. Baldwin,* for appellants.

*Clarence S. Beck,* Attorney General, and *John E. Wenstrand,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action for a declaratory judgment to test the constitutionality of sections 81-263.01 to 81-263.10, R. R. S. 1943, and section 81-263.06, R. S. Supp., 1959, which will hereafter be referred to as the Grade A Milk Act. The defendants demurred to plaintiffs' petition which the trial court sustained. Plaintiffs refused to plead further and stood on their petition. The trial court thereupon dismissed plaintiffs' petition. Plaintiffs have appealed.

The plaintiffs are engaged in the business of owning and operating milk processing plants in Lincoln, Hebron, and Deshler, Nebraska. The defendant Finigan is the Director of the Department of Agriculture and Inspection of the State of Nebraska, and charged with the duty of prescribing regulations for the production, processing, and sale of Grade A milk and milk products, and of enforcing the statutes and regulations adopted pursuant thereto. The defendant Flagg is the Chief of the Bureau of Dairies, Foods and Drugs in such department and is in direct charge of the supervising and enforcing of such statutes and regulations. The defendant Grade A Milk Advisory Board of the State of Nebraska was created under section 81-263.03, R. R. S. 1943, and is advisory to the Director of the Department of Agriculture and Inspection in the promulgation of regulations and the enforcement thereof.

It is the contention of the plaintiffs that section 81-263.02, R. R. S. 1943, of the act contains an unlawful delegation of legislative power to the Director of the Department of Agriculture and Inspection in that it violates Article II, section 1, and Article III, section 1, of the Constitution of Nebraska. Section 81-263.02, R. R. S.

1943, provides: "The director is hereby authorized to adopt, by regulation, minimum standards for the sanitary quality, production, processing, distribution, and sale of Grade A milk and Grade A milk products, and for labeling of the same. Such regulations shall comply generally with the Milk Ordinance and Code—1953 recommendations of the Public Health Service, of the Department of Health, Education and Welfare of the United States."

Section 81-263.10, R. R. S. 1943, provides in part: "Any person or persons violating the provisions of sections 81-263.01 to 81-263.10 or the rules and regulations issued thereunder, * * * shall be guilty of a misdemeanor and shall, upon conviction thereof, be fined not less than twenty-five dollars nor more than one hundred dollars for the first violation, and not less than one hundred dollars nor more than five hundred dollars for a subsequent violation."

It is fundamental that the Legislature may not delegate legislative power to an administrative or executive authority. Smithberger v. Banning, 129 Neb. 651, 262 N. W. 492, 100 A. L. R. 686. The Legislature does have power to authorize an administrative or executive department to make rules and regulations to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law within designated limitations. Such authority is administrative in its nature and its use by administrative officers is essential to the complete exercise of the powers of all departments. State ex rel. Martin v. Howard, 96 Neb. 278, 147 N. W. 689. It is fundamental, also, that in the legislative grant of power to an administrative agency such power must be limited to the expressed legislative purpose and administered in accordance with standards prescribed in the legislative act. The rule was stated by this court in Board of Regents v. County of Lancaster, 154 Neb. 398, 48 N. W. 2d 221, in the following language: "The exercise of a legislatively-delegated authority to make

rules to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law with designated limitations, is not an exclusive legislative power. It is administrative in its nature and its use by administrative agencies is usually essential to the complete and wise exercise of the power in the accomplishment of the purpose which the Legislature intended. Consequently, the courts are not inclined to interfere with rules established by legislative direction where they bear a reasonable relation to the subject of the legislation and constitute a reasonable exercise of the powers conferred."

The limitations of the power granted and the standards by which the granted powers are to be administered must, however, be clearly and definitely stated in the authorizing act. The plaintiffs contend that these requirements have not been met in the present act and that they therefore violate constitutional prohibitions.

The act authorizes the director to adopt, by regulation, minimum standards for the sanitary quality, production, processing, distribution, and sale of Grade A milk and Grade A milk products, and for the labeling of the same. No limitation is placed upon the power of the director or the standards by which such granted power is to be exercised except that they are to comply generally with the Milk Ordinance and Code—1953 recommendations of the Public Health Service of the Department of Health, Education and Welfare of the United States. It will be observed that the ordinance and code referred to are recommendations only. They constitute a suggested model to be used in making regulations for the production and sale of Grade A milk and other grades as well. They have not been promulgated or published as regulations by any department of the United States government. They are not required to be filed in any public office or registry and their content can be established only by extrinsic evidence since this court cannot take

judicial notice of their existence or what they may contain.

It will be noted also that section 81-263.10, R. R. S. 1943, provides criminal penalties for violation of the Grade A Milk Act and the regulations promulgated by the director. The validity of the regulations is dependent upon proof by extrinsic evidence, which is uncertain as to status and not readily available. Their validity cannot be ascertained from the authorizing statute. Criminal prosecution cannot be grounded on such nebulous definitions of crime. All crimes are statutory in this state. The validity of a statute purporting to define a crime cannot be based on such an indefinite, uncertain, and obscure basis of validity as is presented by the statute before us.

In Lane v. State, 120 Neb. 302, 232 N. W. 96, this court said: "In this state all public offenses are statutory; no act is criminal unless the legislature has in express terms declared it to be so; and no person can be punished for any act or omission which is not made penal by the plain import of the written law." In State v. De Wolfe, 67 Neb. 321, 93 N. W. 746, the court said: "In this state all public offenses are statutory, and no person can be punished for any act or omission not made penal by the plain import of the written law." See, also, State v. Pielsticker, 118 Neb. 419, 225 N. W. 51.

The Legislature purported to grant authority to the director to make regulations which comply generally with the described milk ordinance and code, and provided that a violation of such regulations constituted a criminal offense with a fixed penalty. The director was thereby empowered to arbitrarily promulgate any regulations he saw fit if they complied generally with the milk ordinance and code. The effect is that the director was authorized to select any regulations he chose which were within the scope of the described model milk ordinance and code, the violation of which was to be a criminal offense. The attempt of the Legis-

lature to thus grant to the director the power to create criminal offenses violates all fundamental concepts relating to the delegation of legislative authority. By this statute the director and not the Legislature defines what shall be criminal offenses. It is axiomatic that the power to define crimes and criminal offenses is in the Legislature and it may not delegate such power to an administrative agency.

In Smithberger v. Banning, *supra*, we cited the following with approval from the case of Darweger v. Staats, 153 Misc. 522, 275 N. Y. S. 394: "The act adopts not a law of the congress, but a body of rules and regulations prepared by individuals, approved by an administrative authority and finally approved by the president, and then provides that, upon filing a certified copy in the office of the secretary of state, a violation of any provision of such Code so adopted and filed is a crime under the laws of the state of New York. To term such a method of legislation, such a manner of attempting to create criminal offenses, vicious is to indulge in mild criticism. To hold such a legislative act constitutional seems contrary to the plain language and import of our fundamental laws, both national and state."

In Wichita Railroad & Light Co. v. Public Utilities Comm., 260 U. S. 48, 43 S. Ct. 51, 67 L. Ed. 124, the United States Supreme Court in dealing with a similar situation said: "In creating such an administrative agency the legislature, to prevent its being a pure delegation of legislative power, must enjoin upon it a certain course of procedure and certain rules of decision in the performance of its function. It is a wholesome and necessary principle that such an agency must pursue the procedure and rules enjoined and show a substantial compliance therewith to give validity to its action." To uphold such a delegation of legislative power to an administrative officer or agency, as was attempted in the present case, would lead to far-reaching and dangerous consequences. Since regulations can be changed at

any time by the director, it is within his power to change or add to regulations previously promulgated, file them with the Secretary of State, and immediately they have the effect of law for a violation of which one may be punished criminally.

The public has a right to know what acts constitute crimes in this state and the punishments provided therefor. They may properly assume that crimes and punishment are purely a legislative function and that the definition of all crimes  and the punishment therefor will be found in the duly enacted statutes of this state. The public may properly rely on the fact that the Legislature meets only at stated intervals and that criminal laws may be enacted, amended, and repealed only during such legislative sessions. For this court to hold that administrative or executive officers, or departments, could make rules and regulations from time to time according to judgment or whim, which would have the effect of law and the violation of which would be punishable as crimes, would be to ·deprive the people of the protection of the personal rights for which constitutions were devised to protect. The Grade A Milk Act is clearly unconstitutional in that it unlawfully delegates legislative powers to the Director of the Department of Agriculture and Inspection. The Legislature may not avoid by delegation the performance of its exclusive function to define crimes and provide the punishment therefor.

We do not hold that the Legislature may not adopt a law or regulation of another jurisdiction by reference. It may even adopt such except insofar as it is not in conflict with existing laws of this state. But it ·may not adopt by reference only to the extent that an administrative agency or officer shall see fit to adopt it. To so do is to delegate to the administrative agency or officer the determination of matters which are legislative and, consequently, for the determination of the Legislature.

The plaintiffs assert a second ground of unconstitutionality which deserves the attention of this court. Section 81-263.06, R. S. Supp., 1959, provides in part that after July 1, 1959, it shall be unlawful for any person owning or operating any milk plant to sell, offer, or expose for sale any milk or cream in any form or in combination unless it is labeled Grade A and produced and processed in conformity with the requirements of sections 81-263.01 to 81-263.10, R. R. S. 1943, and in compliance with the rules and regulations of the director promulgated in compliance with such sections.

The plaintiffs alleged in their petition that they have not complied with the foregoing statutes relating to Grade A milk and milk products and that they desire to continue to sell such products. They allege that the milk and milk products which they desire to sell, although not in compliance with Grade A statutes and regulations, are in all respects wholesome, pure, and fit for human consumption. They further assert that such milk and milk products are palatable, nutritious, and not deleterious to health, and are produced and processed in accordance with the general health and sanitary regulations contained in other statutes on the subject. These facts are admitted to be true by defendants' demurrer. It is contended that sections 81-263.01 to 81-263.10, R. R. S. 1943, and amendments thereto, unlawfully prohibit the processing and sale of milk and milk products that are healthful, wholesome, and nutritious, and that such statutes have the effect, if enforced, of using the police power of the state for the purpose of prohibiting the sale of one class of nutritious and wholesome food products in order to aid the sale of another class of similar food products.

A citizen clearly has the right to engage in any occupation not detrimental to the public health, safety, and welfare. Measures adopted by the Legislature to protect the public health and secure the public safety and welfare must have some reasonable relation to those

proposed ends. A citizen has a constitutional right to own, acquire, and sell property, and if it becomes apparent that the statute, under the guise of a police regulation, does not tend to preserve the public health, safety, or welfare, but tends more to stifle legitimate business by creating a monopoly or trade barrier, it is unconstitutional as an invasion of the property rights of the individual. The court has also consistently held that the regulation of legitimate business may not be so unreasonable as to result in the confiscation of property and the rights incidental to its ownership. This court cannot give judicial approval to legislation that violates these fundamental principles on any theory that they are permissible under Article I, section 3, of the Constitution of this state, commonly referred to as the due process clause.

The approval of such a provision, extended to other trade, would enable the Legislature to ban many common articles of commerce, such, for example, as syrup not all maple, shoes not all leather, clothes not all wool, and the like. The Legislature has no such power. Any attempt to accomplish such results is in violation of the constitutional right to engage in trade and business, secured by the due process clauses of the state and federal Constitutions.

In John F. Jelke Co. v. Emery, 193 Wis. 311, 214 N. W. 369, 53 A. L. R. 463, quoted with approval in Carolene Products Co. v. Banning, 131 Neb. 429, 268 N. W. 313, the court said: "It prohibits the carrying on of a legitimate, profitable industry and the sale of a healthful, nutritious food. This prohibition can only be justified upon the ground that it is necessary in order to protect the public health, public morals, public safety, prevent fraud, or promote the public welfare. As already indicated, the public health is not endangered by the manufacture and sale of oleomargarine and certainly no question of morals is involved. * * * Under the facts proven in this case, whatever the economics

of the situation may be, from the standpoint of constitutional right the legislature has no more power to prohibit the manufacture and sale of oleomargarine in aid of the dairy industry than it would have to prohibit the raising of sheep in aid of the beef-cattle industry or to prohibit the manufacture and sale of cement for the benefit of the lumber industry. In some cases a proper exercise of the police power results in advantage to a particular class of citizens and to the disadvantage of others. When that is the principle purpose of the measure, courts will look behind even the declared intent of legislatures and relieve citizens against oppressive acts where the primary purpose is not the protection of the public health, safety, or morals."

The foregoing question was directly decided in Carolene Products Co. v. Banning, *supra*, wherein this court held: "The evils of which the state complains can undoubtedly be avoided by reasonable legislative regulation. The fixing of uniform standards in the sale of milk products will provide ample protection for the public. The legislature has the power to prohibit the sale of food products that are dangerous or poisonous but it cannot prohibit the sale of a wholesome and nutritious food product." See, also, Hall v. State, 100 Neb. 84, 158 N. W. 362, L. R. A. 1916F 136; State ex rel. English v. Ruback, 135 Neb. 335, 281 N. W. 607.

It is elementary that courts do not determine economic policies of legislation. The wisdom of such legislation is for the Legislature to determine. It is just as elementary, however, that in order for such legislation to be valid under the police power of the state it cannot be arbitrary or discriminatory, but must have a real and substantial relation to the objects sought to be attained. Courts are not powerless to determine the character of such legislation. The construction of statutes and the determination of their reasonableness is the ultimate province, responsibility, and duty of the courts and must be exercised by them if state and fed-

eral constitutional guarantees of liberty and property rights are not to be made subservient to pressure groups which seek and frequently secure the enactment of statutes advantageous to a particular industry and detrimental to another under the guise of police power regulations. The preservation of constitutional guarantees against such invasions of constitutional rights is one of the foremost duties imposed upon the courts.

The power of the Legislature to prohibit the sale of dangerous products and to regulate the sale of legitimate products when the health, safety, and welfare of the public is involved is one thing. The prohibition of the sale of legitimate products, not involving the health, safety, or welfare of the public, in the present case wholesome and nutritious milk and milk products, involves quite another.

We do not purport to hold that the processing and sale of milk and milk products as a food is not subject to reasonable regulation under the police power. We do hold that the legislative right to regulate does not authorize the Legislature to prohibit the sale of a food product which is wholesome, nutritious, healthful, and fit for human consumption.

An exception to this general rule is the right of the state, under the police power, to enact laws which are designed to provide a minimum amount of nutritional elements and prevent fraud and deception upon the public. State v. McCosh, 134 Neb. 780, 279 N. W. 775. It is not here contended that the prevention of fraud upon the public plays any part in the present case.

Plaintiffs assert in their petition that since the adoption of the Grade A milk statutes, and the regulations promulgated pursuant thereto, the number of Grade A raw milk producers in the state has been reduced from 3,600 to 800, that this number will continue to decline if the act be enforced, and that plaintiffs will be forced to discontinue business if the enforcement of the act and regulations promulgated pursuant thereto

are not enjoined. It is asserted also that the regulations imposed are so unreasonable and require such an outlay in building and equipment costs that farmers cannot, or are unwilling to, continue the production of milk. In view of the conclusions we have reached we do not deem it necessary to pass upon the reasonableness of the regulations purported to have been promulgated; nor do we deem it necessary to pass upon the question of classification, or whether or not the regulations generally comply with the model code as directed by the act. Other issues are also raised which we likewise do not discuss in view of the conclusion reached.

We hold sections 81-263.01 to 81-263.10, R. R. S. 1943, and section 81-263.06, R. S. Supp., 1959, to be violative of Article I, section 3, Article II, section 1, and Article III, section 1, of the Constitution of Nebraska, and said acts are void and of no effect. The prayer of the plaintiffs for a permanent injunction should have been granted. The judgment of the district court is reversed and the cause remanded with directions to enter a judgment permanently enjoining the defendants from enforcing or attempting to enforce sections 81-263.01 to 81-263.10, R. R. S. 1943, and section 81-263.06, R. S. Supp., 1959, and the regulations of the Director of the Department of Agriculture and Inspection promulgated pursuant thereto. The costs of the action are taxed against the defendants.

REVERSED AND REMANDED.