PHILIP C. ANDERSON ET AL., APPELLANTS, V. NORBERT
TIEMANN ET AL., APPELLEES.
155 N. W. 2d 322

Filed December 22, 1967.   No. 36810.

Ray C. Simmons, for appellants.

Clarence A. H. Meyer, Attorney General, and Richard H. Williams, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

The plaintiffs seek a declaratory judgment holding L.B. 377, sections 14 through 137, enacted by the 1967 Legislature, unconstitutional and totally void insofar as it relates to the state income tax, and enjoining the defendants from enforcement. Plaintiffs include domestic

corporations and both resident and nonresident individuals. Defendants are various officials of the State of Nebraska. Issues were joined on a demurrer, stipulation of facts, and a later motion for summary judgment. The district court held that sections 14 to 137, L.B. 377, were valid in all respects, with one exception dealing with a portion of section 115 which was held invalid but severable, and dismissed the plaintiffs' petition.

L.B. 79 of the 1965 session of the Nebraska Legislature provided for the submission of a constitutional amendment on a state income tax to a vote of the people. That constitutional amendment was submitted to and approved by the electorate at the general election in November 1966. The amendment to Article VIII provides: "Sec. 1B. When an income tax is adopted by the Legislature, the Legislature may adopt an income tax law based upon the laws of the United States."

L.B. 377, designated as the "Nebraska Revenue Act of 1967," contains three general subdivisions. Sections 2 through 13 are designated (a) Sales and Use Tax; sections 14 through 124 are designated (b) Income Tax; and sections 125 through 137 are designated (c) General Provisions.

Section 14, the first section of the income tax subdivision, expressly provides in part: "Any term used in sections 14 to 124 of this act shall have the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required. Any reference to the laws of the United States shall mean the provisions of the Internal Revenue Code of 1954, and amendments thereto, other provisions of the laws of the United States relating to federal income taxes, and the rules and regulations issued under such laws, *as the same may be or become effective, at any time or from time to time, for the taxable year.*" (Emphasis

added.) Other sections of the act make similar references.

The plaintiffs' first contention is that those provisions of L.B. 377 which attempt to make future laws of the United States relating to the federal income tax automatically effective as a part of the state income tax law are unconstitutional. Such action by the Nebraska Legislature is challenged as an unlawful delegation of legislative power to the United States in violation of Article II, section 1, and Article III, section 1, of the Constitution of Nebraska.

It is conceded that the Nebraska Legislature may lawfully adopt by reference an existing law or regulation of another jurisdiction including the United States. Lincoln Dairy Co. v. Finigan, 170 Neb. 777, 104 N. W. 2d 227.

In 1935, this court held that a statute appropriating funds to be expended under the terms and conditions provided by an act of the Congress of the United States to be passed in the future, is an unconstitutional attempt on the part of the Legislature to delegate legislative authority to the Congress of the United States. Smithberger v. Banning, 129 Neb. 651, 262 N. W. 492. That case has not been overruled, and remains law in this jurisdiction, except as it may be affected by the constitutional amendment quoted above. The constitutional amendment having been adopted subsequent to the Smithberger case necessitates an interpretation of the constitutional amendment and a determination as to whether that amendment granted the Legislature the authority, in adopting a state income tax law, to adopt future laws of the United States as they may be or become effective.

The plaintiffs' position is that the words "based upon" in the constitutional amendment connote only something already in existence or effect. The argument is that since the Legislature already possessed power to adopt existing laws of the United States by reference, nothing was changed by the constitutional amendment

and, in effect, it was a useless gesture. We cannot agree.

The term "base" in Webster's Seventh New Collegiate Dictionary is defined as: "The point or line from which a start is made in an action or undertaking" or "The fundamental part of something." Webster's Twentieth Century Dictionary, unabridged (2d Ed.), contains among others, the definitions: "The foundation or most important element, as of a system or set of ideas" and "Anything from which a start is made; basis."

The specific language of the amendment standing alone does not expressly state that future changes are to be included nor does it restrict the application to present laws only. Judicial interpretation is, therefore, required.

On the basis of the legislative history of L.B. 79 of the 1965 Legislature which submitted this amendment to the people, the trial court specifically found that: "* * * it was the intent of the legislature that power be given it by the Amendment to adopt the laws of the United States *with future changes*. The statements of two Senators support this and no statement is contained in the legislative history before the Court expressing a contrary intention."

This court has also recognized the principle of constitutional interpretation that each and every clause in a constitution has been inserted for some useful purpose. Constitutional provisions should receive even broader and more liberal construction than statutes, and constitutions are, not subject to rules of strict construction. Carpenter v. State, 179 Neb. 628, 139 N. W. 2d 541.

In State ex rel. Meyer v. County of Lancaster, 173 Neb. 195, 113 N. W. 2d 63, this court stated: "Where a statute is susceptible of two constructions, one of which renders it constitutional and the, other unconstitutional, it is the duty of the court to adopt the construction which, without doing violence to the fair meaning of the statute, will render it valid."

The cumulative effect of all these considerations is

convincing. We think the clear purport and intent of the constitutional amendment was to grant the Legislature the authority to do exactly what it did. We hold that the constitutional amendment, Article VIII, section 1B, adopted by the electorate in November 1966, grants to the Nebraska Legislature the authority to enact income tax legislation which adopts by reference future income tax laws of the United States as they become effective; and the provisions of L.B. 377 with reference thereto are valid.

The plaintiffs also contend that any such delegation of legislative authority to the United States violates the requirements of a representative form of government imposed by the enabling legislation admitting this state to the Union. By implication, the argument is that even though there was specific state constitutional authority, an adoption of future laws of the United States would still constitute an unconstitutional delegation of legislative authority. The additional implication is that such delegation implies an abdication or waiver of the sovereignty of the state and is, therefore, constitutionally prohibited.

Insofar as the briefs indicate, this is a case of first impression on the issue of whether a state can, by constitutional amendment and subsequent legislative action, adopt present and future income tax laws of the United States, and essentially make the claims for state income tax contingent upon, and correlative with, the establishment of liability for federal income tax. However, the general issue was considered by the 9th Circuit Court of Appeals in the case of Alaska Steamship Co. v. Mullaney, 12 Alaska 594, 180 F. 2d 805 (1950). Although Alaska was at that time a territory, under its organic act, it had the privilege of legislating, including the levying and collecting of taxes and revenue, in much the same manner as a state. The legislative design of basing the income tax on the federal income tax law as then in existence or thereafter amended, and calcu-

lating the state income tax as a percentage of the federal income tax was essentially the same. The court in that case, stated: "We think it is far from clear that any invalid delegation is attempted. There are of course many cases which have held attempts by a legislative body to incorporate provisions into its enactments by reference to future acts or amendments by other legislatures, to be, invalid. But where it can be said that the attempt to make the local law conform to future changes elsewhere is not a mere labor-saving device for the legislators, but is undertaken in order to attain a uniformity which is in itself an important object of the proposed legislative scheme, there are a number of precedents for an approval of this sort of thing. * * * The effort of the Alaska legislature to make its territorial income tax machinery conform to the federal act, and to preserve and continue such conformity, makes sense. It makes for convenience to the taxpayer and for simplicity of administration. (Citing cases.) A similar coordination has been recommended by students of income tax problems for adoption by the states generally. Since the attainment of this uniformity was in itself a major objective of the Alaska legislature, in enacting that the local law must conform, the Alaska legislature, which alone could make this decision, was itself acting, and was not abdicating its functions, nor, in our opinion, making an invalid delegation to Congress."

Since Alaska became a state, its Supreme Court has approved the, basic foundation of the Alaska act, "* * * which was to make the state's claim for income taxes contingent upon the establishment of liability for federal income taxes." The court also referred to "the prime, objective of the Alaska statute which was aimed at convenience to the taxpayer and simplicity of administration." Hickel v. Stevenson (Alaska), 416 P. 2d 236 (1966).

The constitutional amendment with which we are dealing does not require, but only authorizes, the Legis-

lature to base a state income tax law upon the laws of the United States. In connection with a state income tax law, we think it permits the Legislature to use all, part, or none of the laws of the United States as it may determine from time to time appropriate insofar as it may be lawful and practicable to do so. It does not preclude the Nebraska Legislature from repealing its own present enactment or adopting a completely different method of imposition of its income tax, and the Legislature retains the complete legislative power to make all such decisions. The adoption of a state income tax based upon present and future federal income tax laws does not constitute a waiver of the sovereignty of the state, nor an abdication of its functions, nor constitute a violation of the requirements of a representative form of government.

The plaintiffs' next major issue involves the contention that L.B. 377 unconstitutionally delegates legislative authority and judicial powers to the Tax Commissioner. Section 119 of L.B. 377 provides in part: "(1) The Tax Commissioner shall administer and enforce the income tax imposed by this act and he is authorized to make such rules and regulations and to require such facts and information to be reported, as he may deem necessary to enforce the income tax provisions of this act; Provided, that such rules, regulations and reports shall not be inconsistent with the laws of this state or the laws of the United States."

The laws of the United States adopted by reference in L.B. 377 include the Internal Revenue Code, Regulations of the Internal Revenue Department, and court decisions interpreting them. See Estate of Willett v. Commissioner of Internal Revenue, 365 F. 2d 760 (5th Cir. 1966).

The dividing line between constitutional and unconstitutional delegation of legislative power under the decisions of many states, including our own, is difficult to determine exactly. For an extensive discussion of dele-

gation of legislative power and a review of cases on the issue at both federal and state levels, see Louis L. Jaffe, An Essay on Delegation of Legislative Power, 47 Colum. L. Rev., part I at page 359 and part II at page 561.

This court has held: "The Legislature does have power to authorize an administrative or executive department to make rules and regulations to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law within designated limitations. Such authority is administrative in its nature and its use by administrative officers is essential to the complete exercise of the powers of all departments." Lincoln Dairy Co. v. Finigan, *supra*. That case also reiterated the rule stated by this court in Board of Regents v. County of Lancaster, 154 Neb. 398, 48 N. W. 2d 221: "The exercise of a legislatively-delegated authority to make rules to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law with designated limitations is not an exclusive legislative power. It is administrative in its nature and its use by administrative agencies is usually essential to the complete and wise exercise of the power in the accomplishment of the purpose which the Legislature intended. Consequently, the courts are not inclined to interfere with rules established by legislative direction where they bear a reasonable relation to the subject of the legislation and constitute a reasonable exercise of the powers conferred."

L.B. 377 imposes express limitations on the rule-making authority granted to the Tax Commissioner. The rules and regulations are restricted in character to those which are to enforce the income tax laws of this state and including by reference the laws of the United States relative thereto. The rules and regulations must also be consistent with both state and federal laws.

Delegation of legislative power is most commonly indicated where the relations to be regulated are highly technical or where regulation requires a course of con-

tinuous decision. The federal income tax structure comprises a comprehensive, cumulative, and currently functioning body of law in the income tax field. In the area of state income taxation, whether based on federal law or otherwise, it is quite apparent that the complicated and continuous task, if it is to be done at all, must be delegated. Where the Legislature has settled the guiding principles and standards of policy, and has provided the precision and due process which can obviously not be fully obtained in the basic legislation, the act should be upheld. The rule-making authority granted to the Tax Commissioner by L.B. 377 of the 1967 Legislature, is a valid and lawful delegation of authority, and does not violate the Constitution of Nebraska nor of the United States.

The plaintiffs' contentions with respect to unconstitutional delegation of legislative power extend also to the provisions of L.B. 377 which require the State Board of Equalization and Assessment to set the rate of tax on or before November 15 of each year for the taxable year beginning during the subsequent calendar year. Section 15 of L.B. 377, in at least five subsections, explicitly sets out the computations to be made by the state board, the method and manner in which the computations shall be adjusted and determined, and the specific standards to be used in setting the rate of tax. The discussion as to delegation of legislative authority to the Tax Commissioner and the rules set out above also apply with respect to the delegation of authority to the State Board of Equalization and Assessment. L.B. 377 constitutes a valid and lawful delegation of authority to the State Board of Equalization and Assessment and does not violate the Constitution of Nebraska nor the United States.

Basically the same issues are involved with respect to delegation of judicial power. Article V, section 1, of the Constitution, vests judicial power in the tribunals therein named but also gives to the Legislature the power

to create other courts inferior to the Supreme Court. However, L.B. 377 does not create a court but does grant to a state official or administrative body quasi judicial powers. Powers of the same general nature and character are conferred upon many administrative bodies. Such duties are of a quasi judicial nature and yet such bodies are almost invariably held to be administrative. See Dawson County Irr. Co. v. McMullen, 120 Neb. 245, 231 N. W. 840. The conferring upon state agencies or officers, of executive or administrative functions requiring the exercise of quasi judicial powers, does not conflict with the constitutional provisions regarding officers and bodies upon whom judicial power may be conferred. This is particularly true where such powers and duties relate to matters which are peculiarly affected with a public interest and where provision is made for appeal from decisions of such officers or agencies to the courts. L.B. 377 does not unconstitutionally delegate judicial power to the Tax Commissioner.

The plaintiffs also contend that a state income tax based upon the amount of federal income tax is a graduated tax because the federal tax is graduated, and, therefore, it is not levied uniformly and proportionately as required by the Constitution of Nebraska. It should only be necessary to point out that the same constitutional section, Article VIII, section 1, specifically provides that taxes other than property taxes may be authorized by law. The specific constitutional amendment dealing with a state income tax, even if interpreted as limiting the legislative authority to existing federal law, would permit a graduated income tax even if there were otherwise a question.

Plaintiffs also contend that the "franchise tax" is a property tax, is not levied by valuation uniformly and proportionately, and is invalid because of a 1966 constitutional amendment prohibiting the state from levying a property tax for state purposes. Section 34 (2) of L.B. 377 imposes a tax: "* * * for the privilege of ex-

ercising its franchise or doing business in this state in a corporate capacity * * * according to or measured by its entire net income derived from all sources within this state for the taxable year." Although referred to as a "franchise" tax, where such a tax is based upon on measured by the income of a corporation, it is almost universally held to be an excise tax or privilege tax and not a property tax within the meaning of similar constitutional provisions of other states. See Annotation, 71 A. L. R. 256. The constitutional objections raised by the plaintiffs as to validity on these issues cannot be sustained. L.B. 377 does not violate Article VIII, section 1, of the Constitution of Nebraska, requiring taxes to be levied by valuation uniformly and proportionately upon all tangible property and franchises, and prohibiting the state from levying a property tax for state purposes.

The plaintiffs likewise contend that the provisions of section 15 (3) of L.B. 377 which allow a "food sales tax credit" only to residents violates both the privileges and immunities clause and the equal protection clause of the Fourteenth Amendment. So far as we can determine, this is a case of first impression in this country as to the validity of such a "food sales tax credit."

It is clear that the food sales tax credit, although set out in the income tax portion of the Nebraska Revenue Act of 1967, is actually a part of the sales tax rather than the income tax. Section 15 (3) provides that the food sales tax credit of $7 per qualified individual resident is not only allowed as a credit against the income tax payable, but is also allowed as a refund to the extent that the food sales tax credit exceeds the income tax payable by the resident individual for the taxable year. It also specifically provides that a resident individual, with exceptions for individuals who are patients in or inmates of institutions exempt from the tax, shall be conclusively presumed to have paid "retail sales and use taxes imposed by this state equal to the maximum food

sales tax credit allowable." It also provides for credits or refunds for "sales taxes" allowable by the subsection to be claimed on income tax returns, "or in the case of an individual not having tax liability in this state on such forms or claims for refunds as the Tax Commissioner shall prescribe."

The sales and use tax subdivision of L.B. 377, section 8 (2) (a), provides that if any sales or use tax amount has been paid more than once or been erroneously or illegally collected or computed, the excess amount collected or paid may be credited on any sales, use, or income tax amounts then due and payable from the person and any balance may be refunded.

The act itself establishes that the food sales tax credit is intended as a basic sales tax provision rather than an income tax provision.

While the legislative history of the amendment which added the food sales tax credit to L.B. 377 is not clear, a legislative policy is spelled out in the act to allow the credit or refund to be taken or claimed on the individual's state income tax return insofar as income tax returns may be required. For remaining cases, the refund is to be claimed on other forms. Sound administrative reasons would support this legislative policy decision. A legislative determination to substitute the food sales tax credit in lieu of the exemption of certain foods from the provisions of the general state sales tax likewise seems evident. It is undisputed that the state could exempt or exclude foods or food products from the general sales tax if it so desired. The question remains whether the Legislature can constitutionally substitute a food sales tax credit and limit its application to residents.

It would seem reasonable for the Legislature to determine that generally a state sales tax on food for personal use will be paid almost universally by residents of the state, while purchases of such foods in the state by nonresidents are ordinarily minimal. It is also easy

enough to see practical legislative and administrative reasons for the policy of a food sales tax credit in lieu of exempting certain foods from the operation of the general state sales tax. Under an ordinary or common exemption of specified or defined foods from a general sales tax, the Legislature and Tax Commissioner would have the problems of defining and describing the specific foods or food products which were to be exempted and which were not. Retailers charged with the collection of the tax would have the difficult task of separately computing and determining which food items were exempted and which were not. Merely the separate tabulation of taxable and nontaxable items would be a monumental task and additional expense for all concerned. The amount of tax involved would be minimal compared to the legislative, administrative, collection, and enforcement problems involved. For a discussion of such problems with sales and use taxes see, Pierce, Administration and Collection Problems, 9 Vanderbilt L. Rev. 281.

The power of a state to make reasonable and natural classifications for purposes of taxation is clear and unquestioned. "That a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction, or difference in state policy. * * * Similarly, it has long been settled that a classification, though discriminatory, is not arbitrary nor violative of the Equal Protection Clause of the Fourteenth Amendment if any state of facts reasonably can be conceived that would sustain it." Allied Stores of Ohio, Inc. v. Bowers, 358 U. S. 522, 79 S. Ct. 437, 3 L. Ed. 2d 480.

"Like many other constitutional provisions, the privileges and immunities clause is not an absolute. It does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States. But it does not preclude disparity of treatment in the

many situations where there are perfectly valid independent reasons for it. Thus the inquiry in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them." Toomer v. Witsell, 334 U. S. 385, 68 S. Ct. 1156, 92 L. Ed. 1460.

Cases cited by the plaintiffs in support of their position here are either property tax cases or income tax cases involving personal exemptions, all involving no discernible reasonable basis for discrimination except residence. No sales tax cases are cited by any of the parties. Viewed as a form of state sales tax exemption, the classification between residents and nonresidents as to the credit or refund of sales taxes on food for personal use is supported by valid independent reasons other than mere residence.

Even if it be assumed that the food sales tax credit is a part of the income tax rather than the sales tax, the result should be no different. A credit or deduction on income tax for sales taxes paid on food for personal use should logically be treated as a personal expense deduction, as opposed to a business expense deduction. Obviously, all Nebraska sales taxes, including those on food, are deductible when they are properly a part of a business expense deduction, or part of a deduction for expenses incurred in connection with property held for the production of income. Such business expense deductions are available to both residents and nonresidents. A credit or deduction for sales taxes on food for personal use should, therefore, be classified as incurred in personal or nonincome producing activities. The allowance of such credits or deductions constitute an exception to the general principle that personal living expenses are not allowed as deductions for income tax purposes. In the case of such personal credits or deductions, the state may appropriately allow them to residents but exclude them from deductions allowed to nonresidents. Goodwin v. State Tax Commission, 146 N. Y. S. 2d 172,

286 App. Div. 694 (1955). The holding in the Goodwin case stems from Travis v. Yale & Towne Mfg. Co., 252 U. S. 60, 40 S. Ct. 228, 64 L. Ed. 460, and Shaffer v. Carter, 252 U. S. 37, 40 S. Ct. 221, 64 L. Ed. 445, both decided in 1920. The principle which supports such differentiation is the principle which limits both the taxable income and the deductible expenses of nonresidents to those connected with sources within the taxing state. The rule of the Goodwin case has also been adopted by other states since that time. See Berry v. State Tax Commission, 241 Or. 580, 397 P. 2d 780 (1964).

In our opinion, there are substantial reasons for the disparity of treatment between residents and nonresidents and the classification is not discriminatory nor arbitrary. Many facts support this classification, whether the credit, refund, or deduction be viewed from the aspect of a sales tax or an income tax. The Legislature may have been of the opinion that food purchases for personal use are so closely related to the state of residence, particularly with respect to the imposition of a state sales tax, that any exemption, credit, deduction, or refund should be allowed only by the state of residence and not by every other state in which some part of a taxpayer's income might be found and taxed. The wisdom of such a legislative policy is a matter for legislation rather than judicial decision. We hold that the allowance and limitation of the food sales tax credit only to residents does not constitute unjust or unreasonable discrimination under the privileges and immunities and equal protection clauses of the Fourteenth Amendment.

Plaintiffs also contend that L.B. 377 provides for a sales tax, use tax, income tax, and a franchise tax, thereby violating Article III, section 14, of the Nebraska Constitution, which provides: "No bill shall contain more than one subject * * *." If an act has but one general object, no matter how broad that object may be, and contains no matter not germane thereto, and the title

fairly expresses the subject of the bill, it does not violate Article III, section 14, of the Constitution. Rein v. Johnson, 149 Neb. 67, 30 N. W. 2d 548.

The various taxes provided for in L.B. 377, designated as the Nebraska Revenue Act of 1967, are closely related and germane to each other and are all to be administered by the Tax Commissioner. The various taxes are clearly stated in both the title as well as the body of the act and together comprise and constitute components of the tax structure of this state. This court holds that the provisions of L.B. 377 contain but one general subject, taxation, and that it does not violate the Constitution of Nebraska.

There are other constitutional objections raised by the plaintiffs in their briefs. Essentially, these objections do not go to the validity of the income tax as a whole, or do not present justiciable issues as to these plaintiffs. This court has repeatedly held that it will not decide questions of constitutionality unless they have been raised by a litigant whose interests are adversely affected. The courts will not set aside a law as violative of the Constitution for the reason that there is a possibility that one's interest may be injuriously affected in the future. Metropolitan Utilities Dist. v. Merritt Beach Co., 179 Neb. 783, 140 N. W. 2d 626.

The finding and judgment of the lower court that section 115 was partially invalid to the extent it purported to make a violation of regulations of the Tax Commissioner a misdemeanor, but holding the particular invalidity severable, was correct.

The memoradum opinion of the district court evidences a thorough and comprehensive consideration of the issues involved. The judgment of the lower court was correct in all respects and is affirmed.

AFFIRMED.