REQUESTED BY: Senator Ernest Chambers Nebraska State Legislature State Capitol Lincoln, Nebraska 68509
Dear Senator Chambers:
You have asked us several questions about LB 59, as amended.
The amendment to which you refer is denoted as the Morehead-DeCamp amendment adopted May 3, 1983. Several of your questions concern the role of the State Board of Equalization and Assessment in the establishment of the sales and use tax rate. You ask whether the board functions as an entity or as individuals in their individual capacity, whether members may be compelled to accept economic projections with which they disagree, whether if there is an equally divided board, a particular member can be required to change his vote, and assuming that a board member may be ordered to change his vote, what penalty would attach for failure to so vote.
We will answer your questions concerning the general character of the board before proceeding to your further questions with respect to LB 59.
The Nebraska Supreme Court in Anderson v. Tiemann,182 Neb. 393, 155 N.W.2d 322 (1967), recognized that the Board of Equalization with respect to setting the tax rates acts in a quasi-judicial capacity. In this quasi-judicial capacity the board acts to determine the facts and enters orders based thereon. In this respect, the board acts as an entity in that the majority vote of the board determines what action the board will order with respect to tax rates. That entity concept, however, extends only to the final result. Each individual member possesses the capacity to make their own determination of the facts.
Each of the individual members acts in a quasi-judicial capacity and thus must determine for themselves what they believe the facts to be. To that extent, they can accept one version of the facts rather than another and cast their vote in accordance therewith. They cannot be compelled to accept one set of projections rather than another.
We will combine your following two questions in one discussion. In the first instance we would have to assume that one of the members of the board was not in attendance at such a meeting. Under normal judicial rules a tie vote would leave intact the existing situation. In this instance, however, we find it difficult to determine how a tie vote could occur absent the death or resignation or extended illness or incapacity of a board member. Absent such factors, if a tie vote occurred, the logical step to take would be to adjourn the meeting until the absent member could attend and cast a tie breaking vote. In any event, we know of no remedy which could require an individual member to make a particular vote.
To the extent they act in a quasi-judicial capacity, the members of the Board of Equalization perform the same function as any collegial court performs. That is, as a body, they reach a decision based on the required majority vote. While it is not free of doubt, we believe that Neb.Rev.Stat. § 77-27,127 (Reissue 1981) provides the appeal procedure should some party wish to appeal the State Board action setting the tax rate. That would be an appeal to the district court. If the board as a whole fails to fulfill its legal responsibilities as set forth in the statute, mandamus would lie to compel them to act as required by the statute. Should the Board refuse to follow properly entered orders of a court of competent jurisdiction, the members could be held in contempt.
Finally, you ask whether the Legislature may, if they have not succeeded through the passage of LB 59 in compelling the Board of Equalization to set the tax rates at the level deemed necessary by the Legislature, yet at this session enact legislation raising the sales and use tax to the level deemed necessary by the Legislature. It is obvious that the answer to this question is yes. The Legislature has plenary power over taxation and may establish the tax rate for sales and use tax at such rate as it deems necessary, at any time they can within the legislative rules. The Legislature has not compelled the Board of Equalization in LB 59 to set the sales and use tax rate at any particular level. LB 59 does nothing more than require the Board of Equalization to set the sales and use tax rates pursuant to Neb.Rev.Stat. § 77-2715.01 (Supp. 1982). In previous opinions of the Attorney General we have specified the considerations which they must look to in this regard. See, Opinion No. 286, November 12, 1982. In that opinion we indicated that the board must follow the steps set out in subsections (1)(a) through (h) of Neb.Rev.Stat. § 77-2715.01 in setting the tax rate. That result will still be required under LB 59. The only effect of LB 59 is that once the board has established the basic rate required under 77-2715.01, they must then add to it one-half of one percent as required by section 7 of LB 59. Conceivably the Board of Equalization could determine that the basic sales and use tax rate should be three percent. Under LB 59 they would have to add one-half of one percent to that rate for an effective rate of three and one-half percent.
Sincerely, PAUL L. DOUGLAS Attorney General Patrick T. O'Brien Assistant Attorney General