REQUESTED BY: Loran Schmit State Senator
1: Is LB 124, the Grasslands Protection Act, unconstitutional because it effects an unlawful taking of property without just compensation?
2: Does LB 124 contain an unconstitutional delegation of legislative powers in contravention of the Nebraska Constitution, Article II, Section 1?
3: Does LB 124 violate the due process clause of the state and federal constitutions?
No.
No.
No.
DISCUSSION
The Fifth Amendment to the United States Constitution and Article I, Section 21 of the Nebraska Constitution provide in essence that private property cannot be taken or damaged for public use without just compensation. LB 124, the Grasslands Protection Act, would prohibit converting highly erodible native grasslands without first obtaining a permit from a natural resources district. In cases in which the land is classified VI, VII, or VIII by the United States Department of Agriculture, Soil Conservation Service, the district may deny the application. The act further provides that the district may deny the application on any other land if it finds that the landowner does not agree to implement a conservation plan that would limit soil erosion to within specified limits or that the landowner does not agree to a reasonable revegetation plan as a condition of the permit. The act thus contains land use restrictions.
The United States Supreme Court has addressed the question of when land use regulations amount to a taking without just compensation which is prohibited under the federal constitution. In U.S. v. Riverside Bayview Homes, Inc., 474 U.S. ___, 88 L.Ed.2d 419, 106 S.Ct. ___ (1985). The court said:
We have frequently suggested that governmental land-use regulations may under extreme circumstances amount to a "taking" of the affected property. . . . We have never precisely defined those circumstances, . . . but our general approach was summed up in Agins v. Tiburon, 447 U.S. 255,260, 65 L.Ed.2d 106, 100 S.Ct. 2138 (1980), where we stated that the application of land-use regulations to a particular piece of property is a taking only "if the ordinance does not substantially advance legitimate state interests . . . or denies an owner economically viable use of his land." Moreover, we have made it quite clear that the mere assertion of regulatory jurisdiction by a governmental body does not constitute a regulatory taking. . . . The reasons are obvious. A requirement that a person obtain a permit before engaging in a certain use of his or her property does not itself "take" the property in any sense: after all, the very existence of the permit system implies that permission may be granted, leaving the landowner free to use the property as desired. Moreover, even if the permit is denied, there may be other viable uses available to the owner. Only when a permit is denied and the effect of the denial is to prevent "economically viable" use of the land in question can it be said that a taking has occurred. 88 L.Ed. at 426. In this instance the Grasslands Protection Act advances legitimate state interests as is specified in some detail in the opening sections of the act. Additionally, it does not appear as though the act will necessarily deny owners "economically viable" use of their land. As is indicated in the cited case, the permit may be issued in many instances thus allowing the use of the land as desired by the permit applicant. Moreover, even though the application may be denied does not necessarily mean that the only economically viable use for the land would be prohibited. Certainly currently existing uses of the land may be economically viable and other alternative uses other than those requiring a permit may be possible. As a consequence, the Grasslands Protection Act, LB 124, does not appear to be an unconstitutional taking of private property.
The Grasslands Protection Act specifies that natural resource districts may adopt or promulgate rules and regulations that more fully develop the permit process by which applicants may obtain a permit to cultivate highly erodible native grasslands. Natural resource districts are political subdivisions for the state. Neb.Rev.Stat. § 2-3213
(Cum.Supp. 1986). A question that arises is whether this delegation violates the separation of powers provisions found in Article II, Section 1 of the Nebraska State Constitution.
In Lincoln Dairy Company v. Finigan, 170 Neb. 777,104 N.W.2d 227 (1960), the Nebraska Supreme Court said: It is fundamental that the Legislature may not delegate legislative power to administrative or executive authority. . . . The Legislature does have power to authorize an administrative or executive department to make rules and regulations to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law within designated limitations. Id. at 780. Additionally, in Anderson v. Tiemann, 182 Neb. 393, 155 N.W.2d 322 (1967), the court said,
Delegation of legislative power is most commonly indicated where the relations to be regulated are highly technical and where regulation requires a course of continuous decision. . . . Where the Legislature has settled the guiding principles and standards of policy, and has provided the precision and due process which can obviously not be fully obtained in the basic legislation, the act should be upheld.
Id. at 401-2.
Finally, the court has recently said:
The question of how far the Legislature should go in filling in the details of the standards which an administrative agency is to apply raises large issues of policy in which the Legislature has a wide discretion, and the court should be reluctant to interfere with such discretion. Such standards in conferring such discretionary power upon an administrative agency must be reasonably adequate, sufficient, and definite for the guidance of the agency in the exercise of the power conferred upon it and must also be sufficient to enable those affected to know their rights and obligations. . .
The modern tendency is to be more liberal in permitting grants of discretion to an administrative agency in order to facilitate the administration of laws as the complexity of economic and governmental conditions increase. . .
This is particularly true where, as here, the violation of any such regulation does not constitute a criminal act. State ex rel. Douglas v. Nebraska Mortgage Finance Fund,204 Neb. 445, 465, 283 N.W.2d 12 (1979).
Although it is not without dispute, an examination of the act indicates that the bill contains sufficiently specific standards identifying under which circumstances a permit may be issued. Moreover, violations of the act do not constitute violations of the criminal law. Consequently, it is more likely that a court would uphold the act as not an unconstitutional delegation of legislative powers.
The final question you raise is whether the Grasslands Protection Act, LB 124, violates the due process clause of the state and federal constitutions by being arbitrary. To determine whether or not a legislative enactment is so arbitrary that it violates the constitution, the courts have devised differing tests. For instance in Motors Acceptance Corp. v. McLain, 154 Neb. 354, 47 N.W.2d 919 (1951), the Nebraska Supreme Court said as follows:
It is not always necessary that statutes and ordinances prescribe a specific rule of action. This is particularly true in those situations where it is difficult or impractical to declare a definite, comprehensive rule, or where the discretion to be exercised by an administrative officer relates to a regulation imposed for the protection of public morals, health, safety and general welfare. . . .
Such provisions are not violative of constitutional provisions as conferring arbitrary powers where an adequate appeal to the courts is provided. . . . They are not arbitrary or discriminatory if they bear a reasonable relation to the accomplishment of a proper legislative purpose.
Id. at 358-9.
Thus, the act is not unconstitutional if there is an adequate appeal to the courts and the permitting provisions bear a reasonable relation to the accomplishment of a proper legislative purpose. In Section 8 of the act, there is a provision that if any party is aggrieved of a final decision made by a natural resources district pursuant to the act that party may appeal the decision to a court. Thus, the legislation contains an adequate appeal provision. Additionally the permit provisions constitute a means by which the Legislature is undertaking to control erosion of the native grasslands of the State of Nebraska. The act acknowledges that those native grasslands are a valuable resource of the state. The act also acknowledges that if cropping is discontinued on converted native grasslands, revegetation can be difficult and a costly burden to society. The Grasslands Protection Act is one means by which the Legislature is acting in an effort to prevent such serious problems from occurring in the future. As a consequence, the legislation appears to bear a reasonable relation to the accomplishment of the proper legislative purpose of limiting soil erosion in the future.
Very truly yours,
ROBERT M. SPIRE Attorney General
LeRoy W. Sievers Assistant Attorney General