REQUESTED BY: Senator Chris Beutler Nebraska Legislature
 INTRODUCTION
The Engineers and Architects Regulation Act exempts certain construction activities from its requirements. Without going into detail, the exempt activities are basically those where the cost, building area, or height of the building is relatively low. Amendment 2502 to LB 599 would permit such exemptions to be increased by the Board of Engineers and Architects by rule and regulation adopted pursuant to the Negotiated Rulemaking Act. There are no standards in the bill or the amendment to guide the Board when considering whether or how much to increase the exemptions. You have alerted us to a pending amendment, Amendment 3244, which would put a cap on at least some of the increases permitted to be made by the Board. Another pending amendment, 3091, would specify when, and by how much, another of the exemptions is to be raised.
You have inquired whether the discretion proposed to be afforded the Board would violate art. II, § 1, art. III, § I, or any other provision of the Nebraska Constitution. Your focus appears to be on the cited sections' reservation of legislative power to the Unicameral; and, more specifically, on whether Amendment 2502 is an improper delegation of legislative authority. You also ask whether Amendment 3244 addresses your concerns.
Based on the analysis below, we believe you had good reason to be concerned about the constitutionality of the proposal given the lack of any applicable standards to guide the Board. However, if the legislative proposal is modified in accordance with the approaches taken by Amendments 3244 and 3091, it would substantially reduce any worry about an improper delegation of legislative authority.
 ANALYSIS
Your concern about an improper delegation of legislative authority probably stems from the fact that there are no standards provided in the amended bill to guide the exercise of the Board's authority to expand upon the exemptions. The Negotiated Rulemaking Act, Neb. Rev. Stat. §84-921 through § 84-932 (1999), does not provide this type of guidance, either.
Article II, § 1 and art. III, § I of the Nebraska Constitution assign and reserve the exercise of legislative power to the Unicameral. The legislature may delegate to an administrative body the power to make regulations to carry out the legislative will, but the legislature cannot pass on to an administrative body the power to create "law" on a blank slate.
The Legislature does have power to authorize an administrative or executive department to make rules and regulations to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law within designated limitations. . . . The limitations of the power granted and the standards by which the granted powers are to be administered must, however, be clearly and definitely stated in the authorizing act. Bosselman, Inc. v. State, 230 Neb. 471, 476,432 N.W.2d 226, 230 (1988), citing Lincoln Dairy Co. v. Finigan,170 Neb. 777, 780-81 (1960).
In the Bosselman case the court went on to quote a portion of its opinion in State ex rel. Douglas v. Nebraska Mortgage Finance Fund,204 Neb. 445, 283 N.W.2d 12 (1979), for the proposition that because of the increasing complexity of economic and governmental conditions, the modern tendency is to be more liberal in permitting grants of discretion to an administrative agency in order to facilitate the administration of law; particularly where the violation of such regulation does not constitute a crime. Consequently, courts tend not to interfere. But the scenario presented here may be somewhat unique. In the ordinary case the legislature has painted with a broad brush and permitted an administrative agency with more expertise in the area to fill in the details, hopefully having spelled out principles to guide the agency in that endeavor. But here we have a case where the legislature has already gone into the details, spelled out its thoughts on the subject, and now proposes to permit the administrative agency to dictate otherwise.
Thank you for supplementing your opinion request with a letter informing this office about an additional amendment to the bill. You ask whether the new amendment, Amendment 3244, addresses your concerns about improper delegation of legislative authority. This amendment, while not providing any criteria or factors to guide the Board when deciding whether to expand the statutory exemptions, appears to cap or limit the range of the Board's otherwise seemingly unfettered discretion in this area. The amendment would add that any increase of the exemption may not "exceed the Type V, Column B, limitations set forth by the allowable height and building areas table in the state building code adopted in section 71-6403." The state building code is comprised of three separate codes. The referenced table may be Table 503 in the International Building Code (2002). The time we have to respond is limited, so we have not attempted to get into the intricacies of Table 503's many columns and rows. It may be noteworthy, though, that the Table's rows consist of 26 "Groups," which may refer to the type of building being constructed. The allowable number of stories and building area shown in Type V, Column B, vary depending upon the identity of the "Group." In a couple of the Groups, the building area is unlimited, and in one of them the number of stories is, too. We have not explored whether, or how closely, the "Groups" in the table mesh with the categories of construction for which the Table provides the upper limit of the Board's power to afford exemptions from the statutory standards.
Amendment 3244's limitation does not apply to all the increases which the Board may afford under Amendment 2502 to LB 599. The limitation does not apply to the Board's authority to increase the statutory $80,000 project cost demarcation between exempt and non-exempt public works projects. The amendment may leave the Board's authority unconstrained in other areas, too. The name of the referenced table within the building code suggests that the limitation on the Board's new regulatory authority may only apply insofar as qualifying for the exemption hinges solely upon building height or floor area. Where qualifying for the statutory exemption is affected by the building's designed occupancy, the Board's authority to lift that occupancy number may be unlimited. For example, construction of a commercial or industrial building of under 5000 square feet is exempt provided that fewer than twenty persons are to occupy it. Am. 2502 to LB 599, § 3. Since the amendment will permit the Board to "increase" the exemption, arguably the Board could raise the occupancy limit of the proviso a hundredfold while still preserving the exemption. It is difficult to say for sure. It may be that a court would interpret the Board's authority as being limited to altering the area or height restrictions. A building's occupancy level is something that disqualifies an otherwise exemption-eligible building, but it is a factor which may be considered distinct from the exemption, itself. Put another way, the occupancy level relates to the exemption but may be viewed as being separate from it.
Although you did not inquire about it, Amendment 3091, if adopted, should eliminate the concern about a standardless delegation of legislative authority when it comes to increases in the $80,000 limitation. The Amendment raises the dollar amount and provides standards to guide the Board in making future increases to this number.
Although LB 599, Amendment 2502, and the Negotiated Rulemaking Act do not provide standards to guide the Board's discretion, the Engineers and Architects Regulation Act may be a source of guidance to the Board. Neb. Rev. Stat. § 81-3402 (1999), a section within that Act, indicates that the purpose of the Act is to safeguard life, health, and property and to promote the public welfare. The concluding section of the Act, Neb. Rev. Stat. § 81-3455 (1999), includes the legislature's declaration that the Act is necessary for the public convenience and welfare, is remedial in nature, and is to be construed liberally. Thus, it may be concluded that protection of persons and property is the goal. This legislative purpose may supply the requisite standard to guide the Board's regulatory activity. The Legislature has already designated the projects where the risk is deemed sufficiently slight as to not legally require the use of architectural or engineering services. The Board of Engineers and Architects consists of eight members, seven of whom are architects and engineers. Neb. Rev. Stat. § 81-3428 (1999). With this membership, there would seem to be little reason for concern that the body would expand the number of construction projects not requiring the use of members of those professions unless the body was convinced that expanding the exemption would not increase the risk to persons or property. However, it is doubtful that the Board could find that increasing the exemptions makes persons or property more safe, leaving one to wonder what factors could justify increasing the exemptions. Even if a court reviewing the amendments for an improper delegation of legislative authority would turn to the Act's purpose to ferret out standards guiding the Board's discretion, we do not see how the standards gleaned would be ones providing any guidance on establishing increases in the statutory exemptions from public safety requirements. We are again left with a legislative proposal which has not supplied an administrative body any standards to guide the exercise of its rulemaking discretion.
Amendment 3244 does not eliminate these concerns. It proposes to set limits beyond which the regulatory body may not go, but it does not limit the Board's authority to raise the dollar limitation found within the statutory exemption for public works projects. Plus, even where it has set some upper limit to the Board's discretion, it has provided no guiding principles for the Board to use when acting within that range. This office has in the past expressed the opinion that the setting of such caps or upper limits on authority bears upon the question of whether there has been an improper delegation of legislative authority, but the legislation being addressed there included some guidance for the regulatory body; the setting of limits was said to be merely a factor providing greater assurance of constitutionality. Op. Att'y Gen. No. 201 (February 19, 1982).
Because the courts have taken a more liberal view to grants of discretionary authority to administrative agencies and because the discretionary authority in question is fairly narrow in scope — much broader grants of authority have been upheld against challenges of improper delegation of legislative authority, see Board of Regents v. County of Lancaster, 154 Neb. 398, 48 N.W.2d 221 (1951) — we are unsure whether Amendment 2502 to LB 599 would be found to be an unconstitutional delegation of legislative authority. But there is certainly cause for concern. Adoption of Amendments 3244 and 3091, or something akin to them, would most likely solve the problem.
Sincerely,
 JON BRUNING Attorney General
 Mark D. Starr Assistant Attorney General
Approved:
_____________________________ Attorney General
pc: Patrick O'Donnell Clerk of the Legislature